CONCRETE INDUSTRIES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket 26126.  Promulgated April 22, 1930.

*William Surosky, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

656

OPINION.

ARUNDELL: The facts in this case are substantially similar to those in *Woodley Petroleum Co. et al.*, 16 B. T. A. 253. There, as here, the new company (the transferee) acquired the assets of the old company for stock. There, the stock of the new company went directly to the stockholders of the old. Here, the contract provided that the stock of the new company was to go to the stockholders of the old company, but the actual issuance of certificates was delayed until two of the three old stockholders had sold their interests, whereupon the certificates were issued directly to the purchaser of such interests. This delay, however, is of no moment, for when the property of the old company was conveyed to the new, which was accomplished by deed of September 1, 1924, the old stockholders became entitled to the stock and were, as a matter of law, stockholders in the new company. This follows from the well established rule that the issue and delivery of certificates is not necessary to constitute one a stockholder. See *Fred W. Warner*, 5 B. T. A. 963, 969 and cases there cited. This view of the transaction is supported by the fact that when Inglis came to buy into the petitioner corporation he did so by purchasing from Weber and Rene Coirin and not from the corporation.

Now as to the mortgage, that part of the program outlined in the agreement of July 2, 1924, which called for the issue of $400,000 of mortgage bonds was not carried out. It was not until after the assets of the Fairlawn Co. were conveyed to the petitioner that any mortgage was executed, and it was in an amount $100,000 less than originally contemplated and did not run to the persons who under the original plan were to receive the bonds. In view of these facts we think that the mortgage has no bearing on the case. But even if it is a material element, it would not change the result, as will be apparent from the discussion which follows.

Among the authorities quoted in the *Woodley Petroleum* case, *supra*, is *Hibernia Insurance Co.* v. *St. Louis & New Orleans Transportation Co.*, 13 Fed. 516, in part as follows:

Here was a corporation engaged in a profitable business, and owning and possessing property valued at $92,000, exclusive of its franchise. It owed debts confessedly amounting to more or less than the value of its property. It ceases to transact business. Its stockholders organized themselves into another corporation, and all the property is transferred from the old to the new. It matters not that the stockholders in the two companies may not be precisely identical. We are not prepared to say that it would make any difference if the members of the new company were none of them interested in the old. The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, deprives it of the means of paying its debts, enables it to dissolve its corporate existence and place itself practically beyond the reach of creditors, and this without assuming its liabilities. The fact here, however, appears to be that the owners of the two corporations are substantially identical, and hence there is a still stronger case in equity.

Also, *Jennings, Neff & Co.* v. *Crystal Ice Co.*, 128 Tenn. 231; 159 S. W. 1088, reading in part:

There is abundant authority likewise for the proposition that where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation. Thomp. Corp. § 6547; 10 Cyc. 1267; *Altoona* v. *Richardson Gas and Oil Co.*, 81 Kan. 717, 26 L. R. A. (N. S.) 651, 106 Pac. 1025; *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, 70 N. W. 413.

The reason underlying these holdings appears in the *Jennings, Neff & Co.* case in the following language:

Creditors of the old corporation cannot be required to look alone to the stock and bonds which were substituted for the real, tangible assets of that corporation. The value of securities so substituted is more or less problematical, and creditors should not be forced to surrender their claim against available, visible assets, and transfer such claim to new securities. Their remedy cannot thus be hindered and impaired for the benefit of stockholders.

In the present case the Fairlawn Sand & Gravel Co. parted with all of its "real, tangible assets" and under the above decisions the respondent can look to the transferee for satisfaction of his claim to the extent of the value of the property transferred.

In our consideration of *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401, cited by petitioner, we found that cases where the transfer of corporate assets was questioned by creditors fell into three general classes. We found that the facts in the *Fostoria* case brought it within that class of which *American Rwy. Express Co.* v. *Common-*

*wealth*, 190 Ky. 636; 228 S. W. 433, is illustrative and in which the court said:

It is equally well settled that when a sale is a bona fide transaction, and the selling corporation receives money to pay its debts, or property that may be subjected for the payment of its debts and liabilities, equal to a payment of a fair value of the property conveyed by it, the purchasing corporation will not in the absence of a contract obligation or active fraud of some substantial character be held responsible for the debts or liabilities of the selling corporation.

Obviously, the present case does not come within this quotation, for there the selling company, the Fairlawn Sand & Gravel Co., received nothing out of the transaction with which to discharge its liabilities. This case rather comes within the first of the three general classes of cases considered, in which the consideration for the transfer is paid to the stockholders of the transferor corporation and the transferor is left without assets to satisfy its creditors. As to these cases we said:

The courts have uniformly held the purchasing corporation liable to creditors of the selling corporation, to the extent of the value of the property received, the sale being in fraud of creditors and the purchaser being a party to such fraud through his knowledge that the result of the transaction must necessarily leave such creditors with no assets from which to satisfy their claims.

Petitioner contends that under the corporation laws of New Jersey the trustees in dissolution and the beneficiaries, the existing stockholders, were the persons liable for the payment of the corporate liabilities. Section 54 of the Corporation Acts, Compiled Statutes of New Jersey, provides that " upon the dissolution in any manner of any corporation, the directors shall be trustees thereof," with numerous powers, including those of settling its affairs, collecting debts, and selling property " for cash, or partly on credit, or take mortgages and bonds for part of the purchase property * * *." The difficulty with attempting to apply this provision of the corporation law to the present case is that we do not know whether the Fairlawn Co. was in dissolution at the time its assets were sold. Minutes of stockholders' and directors' meetings of petitioner dated August 28, 1924, recite that the Fairlawn Co. had been dissolved, and yet that company joined in the deed of September 1, 1924. But even if section 54 of the New Jersey statute is applicable, there is nothing in it that would relieve the petitioner of liability under the rules above stated. It may be, as in the *Woodley Petroleum* case, *supra*, that when the trustees became stockholders in the purchasing corporation some liability attached to them, but that question is not before us.

It follows from what we have said that petitioner is liable, as a transferee of the Fairlawn Sand & Gravel Co., for the deficiencies determined against that company.

Reviewed by the Board.

*Decision will be entered for the respondent.*