MARK KLEEDEN, COMMERCE EXCHANGE BUILDING, OKLAHOMA CITY, OKLAHOMA, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. A. McARTHUR, 3918 BRANDT STREET, HOUSTON, TEXAS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 88730, 88731.   Promulgated October 11, 1938.

---

822

*A. E. Hill, Esq.*, and *J. Forrest McCutcheon, Esq.*, for the petitioners.

*S. B. Anderson, Esq.*, for the respondent.

825

DISNEY: The question here is simply as to whether there was a liquidation of three corporations, resulting in gain to petitioners as stockholders, measured by the difference between the value of assets distributed to stockholders and original cost of the stock, as determined by respondent, or whether there was no gain or loss by reason of the facts constituting a nontaxable reorganization.

The respondent on brief contends that there were two separate and distinct transactions: First, the transfer by the old corporations of all their assets to McArthur, for himself, and Kleeden, in exchange for their stock, and, second, the transfer by McArthur of the assets to the new corporation in exchange for its capital stock; and that the first transaction was a distribution in liquidation taxable under section 115 (c) of the Revenue Act of 1932, while the second was a nontaxable transaction under section 112 (b) (5) of the same act.

The letters written to the interest holders owning a portion of the properties and the minutes of the stockholders' meetings of the three old corporations (stating that the transaction is to be "an even exchange and for the purpose of merging and consolidating the properties and assets of the company with other corporations * * * into the said new corporation to be known as Black Gold Petroleum Company * * *") plainly show a plan for a consolidation and merger of the old entities, business and properties into a new corporation. That such was the plan in general can not, we think, be gainsaid, and under section 112 (i) (1) (A), Revenue Act of 1932, this was a plan of reorganization. Any difficulty arises from examination of what was done.

The corporate minutes of the old corporations show that their stock was to be assigned back to the corporations as treasury stock as a consideration of the transfer of assets of the corporations, and respondent contends that the consideration was transfer of the assets to R. A. McArthur for himself and Kleeden, the other stockholder, and therefore that a distribution in liquidation resulted, despite the fact that McArthur, on the same day he received the assets, transferred them to the new corporation in consideration of issuance of its stock to the stockholders of the old corporations.

Are the transactions herein involved to be considered separately or together? Does what was actually done overcome the intent to consolidate or merge the old organizations into a new one? Did McArthur, in temporarily holding the assets of the old corporations,

hold them for himself and Kleeden, the stockholders, or as agent to transfer them on to the Black Gold Petroleum Co. pursuant to a plan of reorganization?

Respondent is in essential error, we think, in his contention and assumption that the assignment of stock back to the old corporations, and cancellation of such stock, was in consideration of transfer of assets *to McArthur.* The record convinces us not only that the cancellation of the stock of the old corporation was in consideration of the transfer of their assets *to the new corporation,* but that R. A. McArthur in receiving the assets and holding them temporarily, did so not *as a stockholder,* but as an *agent for transfer* to the new corporation. The language of the minutes which contain the resolution relied upon for respondent's view adds to and explains the resolution, and we think respondent has not sufficiently considered all of the language explaining the situation. The minutes of each company (identical as to each corporation), immediately prior to the resolution, provide in part that McArthur, president of the company, presented to the meeting "the matter of transferring the assets of the company * * * *to a new corporation* * * * with the proposition that all of the capital stock * * * be assigned and transferred back to the company as treasury stock as a consideration of such transfer of said assets and properties * * *." (Italics supplied.) Indubitably, in the above language nothing appears as to transfer *to R. A. McArthur* or the stockholders of the old corporation; but the transfer of assets is to be *to the new corporation,* and the consideration for assignment to the treasury of stock is not transfer of assets *to R. A. McArthur* or *stockholders,* but transfer of assets *to the new corporation.* With this preface we next examine the resolution immediately following the above minutes. There we find provided not a plain transfer of corporate assets to McArthur in consideration of assignment of the corporate stock to the treasury, as contended by respondent; carefully examined, the language is seen to provide an assignment of the corporate assets "to R. A. McArthur, who, in turn, should transfer the same to the new corporation * * * and that all of the stock now owned by the stockholders of the company be assigned and transferred to the treasury of the company *in consideration thereof* * * *." (Italics supplied.) "Thereof", we think, plainly refers not to assignment of assets *to McArthur,* but to assignment *to the new corporation* through him. To conclude otherwise would be to refuse to read the language with the context of the minutes, just preceding, which say nothing of transfer to R. A. McArthur or to stockholders. It is important that there is no statement that the transfer of corporate assets was to the stockholders *as such.* It was to one only, with an immediate pro-

vision that he should retransfer to the new corporation. He did so on the same day he received the assets.

Petitioners explain that the reason for transfer, not directly to Black Gold but to McArthur, who should transfer to Black Gold, was because of certain Oklahoma statutes as to corporations holding property of competitors. Regardless as to whether such reason was sound, it tends to explain what was actually done, but it is not, we think, so explanatory as the corporate minutes, which, as above seen, clearly show that the purpose of the whole matter was a merger or consolidation and shows the consideration for cancellation of the old stock to be transfer of assets to the new corporation and not merely to the old stockholders. We should not, we think, divide this transaction as desired by respondent, but look at it as a whole. Respondent argues that there was no showing of assumption of liabilities by the new corporation, though the resolution of the stockholders' meeting provided for such assumption. Though not definitely stated, we think such an assumption of debts is apparent from the catalogue or schedule of properties, to which is appended a list of liabilities assumed. By the written acceptance of the offer by Black Gold, such liabilities were assumed. The fair inference from this instrument is that the liabilities were intended as those against all the properties, including those of the old corporations. Such assumption of liabilities is consonant with the merger or reorganization planned. Nothing indicates that McArthur or Kleeden assumed the liabilities of the old corporations. Though *Milton H. Bickley*, 1 B. T. A. 544, involved stockholders receiving corporate assets, who executed a definite acknowledgment of their trusteeship for the corporation, and plainly is stronger in that sense than the present proceeding, yet it does indicate that reorganization does not require transfer of assets directly from old corporation to new, but that it can be through stockholders as trustees. Herein McArthur could not successfully have denied his trusteeship, in the face of the language in the minutes showing the agreed purpose of the transfer, the ban against any personal profit or earnings, and the provision for "even exchange" for the purpose of merger. He was as much a trustee as in the cited case.

The certificate of validation by the former interest holders of the exchange shows on its face that the interest holders, at least, took stock in Black Gold *in lieu* of their former holdings. The fact that R. A. McArthur acted at the same time as agent for the interest holders and for the assets which had belonged to the three old corporations tends to place the interest holders and old corporations in the same class, and to indicate that in fact, through McArthur, all received stock in the new corporation for their old interests, of what-

828

ever nature. The new corporation accepted the proposition made to it, thereby becoming a party to the contract, and a party to a reorganization. The old corporations were a party thereto and transferred, through R. A. McArthur, their assets, in pursuance of a plan of reorganization, solely for stock in the new corporation, a party to such reorganization, under section 112 (b) (4) and section 112 (i) (1) of the Revenue Act of 1932.

We conclude that McArthur received the corporate assets not as stockholder, but as agent for transfer thereof in turn to the new corporation, and that the consideration for assignment of the stock to the treasury was the transfer of assets not to McArthur, but to the new corporation. In *Commissioner* v. *Newberry Lumber & Chemical Co.*, 94 Fed. (2d) 447, the court holds that there was reorganization with a new company though a certain bondholders' committee purchased the property and caused its transfer to the new corporation, saying:

\* \* \* It makes no difference that the transaction was effected by the bondholders' committee, for that committee acted for and represented the bondholders in the old corporation, who became bondholders and stockholders in the reorganized corporation. \* \* \*

There is no essential difference, we think, from the situation here at hand and that considered in the cited case. Mere agency intervening between old corporation and new does not prevent reorganization. See also *Wilbur F. Burns*, 30 B. T. A. 163; affd., 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592.

We therefore hold that the transfers herein involved were in connection with a reorganization and did not constitute a taxable distribution in liquidation, and that the respondent was in error in his determination of deficiency as to both petitioners.

> *Decision of no deficiency will be entered in both proceedings.*