*Decision will be entered under Rule 50.*

WERNER ABEGG, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1570–62—1572–62.   Filed April 24, 1968.

---

[1] Proceedings of the following petitioners are consolidated herewith: Cresta Corp., S.A., Transferee, docket No. 1571–62; Cresta Corp., S.A., docket No. 1572–62.

*Emilio A. Dominianni* and *John E. McDermott*, for the petitioners.
*Eugene S. Linett*, for the respondent.

BRUCE, *Judge:* These consolidated cases involve deficiencies determined as follows:

| Docket No. | Petitioner | Year or FYE | Deficiency | Addition to tax Sec. 6651(a), I.R.C. 1954 |
|---|---|---|---|---|
| 1570-62 | Werner Abegg | 1958 | $20,213.96 | |
| | | 1959 | 146.00 | |
| | | 1960 | 27.15 | |
| 1571-62 | Cresta Corp., S.A., Transferee | 1957 | 296,952.18 | |
| 1572-62 | Cresta Corp., S.A. | 2/28/58 | 19,258.45 | |
| | | 2/28/59 | 35,292.99 | $3,518.86 |
| | | 2/29/60 | 43,264.30 | |

Werner Abegg does not contest the deficiencies for 1959 or 1960 in docket No. 1570-62. Respondent concedes the addition to tax for 1959 for delinquent filing determined against Cresta Corp., S.A., in docket No. 1572-62. Other concessions were made by both parties which will be given effect under Rule 50.

The issues for decisions are (1) whether Cresta Corp., S.A., was engaged in trade or business in the United States in its fiscal years ended in 1958, 1959, and 1960; (2) whether the liquidation of Hevaloid and the activation of Suvretta amounted to a reorganization within the meaning of section 368(a)(1) of the 1954 Code; (3) whether the gains upon liquidation and transfer of assets are to be recognized; (4) whether Cresta is liable as a transferee for a deficiency determined against Hevaloid Corporation for 1957; and (5) whether a transfer of assests by Werner Abegg to Suvretta in 1958 resulted in taxable gain or recognizable loss to Abegg.

FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Werner Abegg has been a citizen of Switzerland since prior to 1938. Except for 1940 through 1946, he has not been a resident of the United States. He is an industrialist. From 1946 until 1966 he was not engaged in business in the United States. In 1957 he was in the United States from January 1 to March 27 only. Throughout the year 1957 his U.S. assets exceeded his liabilities by at least $2 million. He filed a Federal income tax return for 1958 with the district director of internal revenue for Upper Manhattan, New York. The return, on Form 1040NB, reported income of $12,912.55 from dividends and tax liability of $3,873.78, withheld at source.

Suvretta Corp., S.A., was incorporated in 1941 under the laws of the Republic of Panama. Its name was changed to Cresta Corp., S.A., on or about March 5, 1958. Its authorized capital stock was 1,000 shares of no-par-value common stock. In the years in issue Werner Abegg was its sole stockholder. It filed Federal corporation income tax returns for fiscal years ending the last day of February in 1958, 1959, and 1960 with the district director of internal revenue for Upper Manhattan, New York. It was organized to acquire certain patents registered under the laws of various foreign nations, but as a consequence of the German occupation of Luxembourg this purpose was not carried out and it was inactive until 1957.

Hevaloid Corp. was organized under the laws of the State of Delaware in 1938. Its authorized capital was 2,000 shares of no-par-value common stock of which 250 shares were issued to Werner Abegg. No other stock was issued. It filed corporation income tax returns for the calendar years 1956 and 1957 with the district director of internal revenue for Upper Manhattan, New York.

Robert A. Cavin has been a close associate, friend, and business adviser to Werner Abegg since prior to 1938. During the year 1957 Robert A. Cavin was president of Hevaloid. During the years 1958, 1959, and 1960 Robert A. Cavin was president and treasurer of Cresta.

On June 27, 1938, Hevaloid purchased from Cela Holding, S.A., a corporation organized under the laws of Luxembourg, 12 patents and patent applications registered under the laws of the United States and 10 patents and patent applications registered under the laws of Canada. These patents related to the manufacture of belts and belting and various rubber products from various chemical processes. Hevaloid also purchased presses and other machinery to be used in the manufacture of such belts and belting and rubber products.

From 1938 until November 1944 Hevaloid leased its patents and machinery to L. H. Gilmer Co. of Philadelphia, Pa. From 1944 until April 1947 Hevaloid leased its patents and machinery to the U.S. Rubber Co.

In April of 1945 Hevaloid acquired from Cela Holding, S.A., certain other patents registered under the laws of various foreign nations.

From April 1947 until November 1955 Hevaloid leased its patents and machinery to Globe Woven Belting Co. of Buffalo, N.Y. In 1955 all of Hevaloid's patents expired and it sold all of its machinery to Globe Woven Belting Co. in November of that year. In 1956 and 1957 Hevaloid's assets consisted exclusively of cash, stocks and securities, receivables, and certain rights in the motion picture, "Guest In The House."

During the period March 28, 1957, to December 11, 1957, Hevaloid was completely liquidated and dissolved in the following manner:

(a) A special meeting of the board of directors of Hevaloid was held on March 28, 1957, and a plan of complete liquidation and dissolution was duly adopted.

(b) On April 3, 1957, a consent to the dissolution of Hevaloid was duly executed by Werner Abegg and was filed with the State of Delaware.

(c) A certificate of dissolution was issued by the State of Delaware on April 18, 1957, and was recorded, and immediately thereafter Hevaloid withdrew from the various States in which it was authorized to do business.

(d) During April and May of 1957 Hevaloid, pursuant to its plan of liquidation, sold the following stocks. The sales of these stocks were effected by Laird & Co., stockbrokers:

| Name of stock | Number shares | Cost | Date sold | Amount realized on sale | Gain |
|---|---|---|---|---|---|
| General American Oil Co. of Texas_____ | 7,926 85/100 | $122,254.42 | 4/26/57 5/1/57 | $317,981.88 | $195,727.46 |
| Signal Oil and Gas Co_____ | 21,155 | 489,794.11 | 4/30/57 5/2/57 | 1,174,899.08 | 685,104.97 |
| Great Northern Ore Properties_____ | 37,000 | 75,014.71 | 4/25/57 5/1/57 | 114,281.17 | 39,266.46 |
| Sinclair Oil Corp_____ | 1,000 | 51,576.20 | 4/25/57 | 64,178.58 | 12,602.38 |
| Totals_____ | | 738,639.44 | | 1,671,340.71 | 932,701.27 |

These sales were included in Schedule D of Hevaloid's final Federal income tax return for the taxable year 1957 but were claimed as not recognized pursuant to the provisions of section 337 of the 1954 Code. The proceeds from the sales of such stocks were deposited to Hevaloid's account in the New York Trust Co., New York City, N.Y.

(e) On May 7, 1957, Hevaloid executed stock powers and distributed, pursuant to its plan of complete liquidation, the following stocks to Werner Abegg by delivery of the certificate and stock powers to Laird & Co. in New York, N.Y.:

| Shares | Corporation | Adjusted basis | Fair market value |
|---|---|---|---|
| 7,470 | Brazos River Gas Co_____ | $9,337.50 | $22,410.00 |
| 2,720 | Medallion Petroleum Ltd_____ | 4,767.54 | 13,545.60 |
| 13,692 | Producing Properties, Inc_____ | 45,340.00 | 95,844.00 |
| | | 59,445.04 | 131,799.60 |

(f) On May 23, 1957, pursuant to instructions received from Hevaloid issued under its plan of complete liquidation, Laird & Co., New York, N.Y., transferred the following stocks from the account of Hevaloid to the account of Werner Abegg:

| Shares | Corporation | Adjusted basis | Fair market value |
|--------|-------------|----------------|-------------------|
| 1,945 | Magma Copper Co. | $53,097.30 | 1 $145,996.95 |
| 2,600 | Signal Oil & Gas Co. | 60,196.95 | 157,462.50 |
| | | 113,294.25 | 303,459.45 |

1 As shown by par. 11(f) of stipulation. Par. 15(b) of stipulation uses figure $145,996,56.

(g) On May 23, 1957, Hevaloid executed assignments in favor of Werner Abegg, transferring to him, pursuant to its plan of complete liquidation, its interest in the loan receivable due from Perosa Corp. and in the motion-picture film right "Guest In The House." Hevaloid had a zero basis for "Guest In The House."

(h) During the period March 28, 1957, to December 11, 1957, Hevaloid made the following distributions in cash, pursuant to its plan of complete liquidation, to its sole stockholder, Werner Abegg, and closed its bank accounts with the New York Trust Co. and Hunterdon County National Bank, Hunterdon County, N.J. On May 1, 1957, Hevaloid drew its check payable to Werner Abegg on the New York Trust Co. in the amount of $1,500,000. On May 2, 1957, Hevaloid drew its check on the New York Trust Co. payable to Werner Abegg in the amount of $160,936.20. On December 11, 1957, Hevaloid drew its check on the Hunterdon County National Bank payable to Werner Abegg in the amount of $32,156.05. All three checks were deposited to the account of Werner Abegg at the Bankers Trust Co., New York City, N.Y. All of Hevaloid's assets were distributed in complete liquidation by December 11, 1957.

Meridan Corp., hereinafter called Meridan, was a corporation organized under the laws of Rhode Island in 1940. In 1951 all of its stock was owned by the following:

| | Number of shares |
|--|-----------------|
| G. Fry | 200 |
| G. B. Fry | 600 |
| T. Harwood | 800 |
| S. Schiff | 800 |
| Werner Abegg | 2,500 |
| | 4,900 |

In 1954 Werner Abegg purchased an additional 1,100 shares of the stock of Meridan, of which he transferred 600 shares to Robert A. Cavin, leaving Werner Abegg with 3,000 shares and Meridan with 6,000 shares issued and outstanding.

In 1954 Meridan acquired the plant, business, and other assets of Everett Piano Co. of South Haven, Mich.

The financial statement of Meridan as of December 31, 1957, which it is agreed fairly reflects the position of Meridan as of May 1, 1957, shows:

| | Everett Piano Division | Total |
|---|---|---|
| Assets | $1,845,991.89 | $3,276,125.94 |
| Liabilities | 436,359.67 | 765,453.07 |
| Stockholders' equity | 1,409,632.22 | 2,510,672.87 |

On May 6, 1957, Suvretta issued 1,000 shares of its no-par common stock to Werner Abegg in return for cash and other assets as follows:

(a) On May 7, 1957, Werner Abegg's check drawn on the Bankers Trust Co. payable to Suvretta in the amount of $1,500,000 was received by Suvretta and deposited to its account at the First National City Bank, New York. Of this amount, $1,250,000 was paid in for stock and $250,000 was a demand loan.

(b) On May 24, 1957, Laird & Co. under instructions of Werner Abegg transferred from the account of Werner Abegg to the account of Suvretta the following stocks:

| | Name of corporation | Fair market value |
|---|---|---|
| 2,600 | shares of Signal Oil and Gas Co | $157,462.50 |
| 1,945 | shares of Magma Copper Co | 145,996.56 |
| 12,054<br>7,470 | shares of Brazos River Gas Co | 58,572.00 |
| 2,720 | shares of Medallion Petroleum Ltd | 13,545.60 |
| 13,692 | shares of Producing Properties, Inc | 95,844.00 |
| 2,000 | shares of Illinois Central Railroad | 111,500.00 |
| $160,000 | 5½ percent note, due 1976—Brazo River Gas Co | 118,400.00 |
| 620 | shares 6 percent preferred of Producing Properties, Inc | 9,842.50 |
| $46,500 | 5 percent bond due 1969—Producing Properties, Inc | 27,376.88 |
| 1,000 | shares of Olin Mathieson Chemical Corp | 53,562.50 |
| | | 792,102.54 |

All of the above stocks were marketable and could be sold on various stock exchanges in the United States and on the over-the-counter market.

(c) On May 24, 1957, Werner Abegg executed stock assignments in favor of Suvretta, transferring to Suvretta 3,000 shares of Meridan Corp. stock, having a fair market value of $1,291,080 and 1,000 shares of Perosa Corp. stock which had no value.

(d) On June 8, 1957, Werner Abegg executed assignments in favor of Suvretta, transferring to Suvretta his interest in the motion-picture film right "Guest In The House" and his interest in a debt due from Perosa Corp. Approximately $18,000 was collected on this debt, and in a subsequent year the balance was written off as uncollectible. The sum of $2,550, all of which was collected prior to 1961 with respect to the motion-picture film right "Guest In The House," has been collected to the date of trial. The film right has never been sold by Suvretta or Cresta.

On February 6, 1958, the directors of Suvretta held a meeting in New York, N.Y. The members of the board, Werner Abegg, Robert A. Cavin, James E. Hughes, and George F. Mason, Jr., were all present. It was resolved that the corporation take all action necessary to qualify it to do business in the State of New York, that it accept certain transfers of cash and securities from Abegg as contributions to capital, and that it borrow an additional $250,000 from Abegg on open account repayable on demand.

On February 13, 1958, Werner Abegg's check drawn on Bankers Trust Co. payable to Suvretta in the amount of $400,000 was received by Suvretta and deposited to its account at the First National City Bank, New York, N.Y. This amount was recorded as a contribution to capital.

On February 26, 1958, Abegg transferred to Suvretta the following shares of stock, and such transfer was recorded on the books of Suvretta as a contribution to capital. Suvretta did not issue its stock or any other property to Abegg in exchange therefor. All of the contributed stock was held by Abegg since prior to December 31, 1957, and as to Abegg were capital assets:

| Stock | Adjusted basis | Fair market value |
|-------|---------------|-------------------|
| 50,680 shares of Brazos River Gas Co | $55,850.00 | $101,360 |
| 4,250 shares of General American Oil Co | 91,653.12 | 110,578 |
| 12,650 shares of Magma Copper Co | 1,300,970.50 | 449,075 |
| | ¹ 1,448,473.62 | 661,013 |

¹ Par. 20 of stipulation incorrectly stated total adjusted basis as $1,348,473.62.

Abegg effected the transfer of such stocks to Suvretta while present in the United States and the transfer was made in the United States. Abegg was present in the United States from January 17, 1958, through May 17, 1958.

On May 29, 1957, Abegg drew a check on Bankers Trust Co. payable to Suvretta in the amount of $400,000 which was received by Suvretta and deposited to its account at the First National City Bank, New York, N.Y. This amount was recorded as a contribution to capital.

On or about February 6, 1958, Suvretta attempted to register with New York State as a corporation which would do business in New York State and discovered that the similarity of its name to another corporate name would require it to change its name. Accordingly, Suvretta changed its name to Cresta on or about March 5, 1958, and on or about the same date registered with New York State as a corporation doing business in New York State.

Subsequent to the mailing of the notice of liability in case docket No. 1571–62, Cresta paid $296,952.18 with respect to the deficiency

determined against Hevaloid for the taxable year ended December 31, 1957.

Subsequent to the mailing of the notice of deficiency in case docket No. 1572–62, Cresta made the following payments of tax with respect to the following taxable years (which payments were assessed on March 16, 1962, under section 6213(b)(3), 1954 Code):

| FYE— | Amount |
|---|---|
| February 28, 1958 | $19,258.45 |
| February 28, 1959 | 35,292.99 |
| February 29, 1960 | 43,264.30 |

No determination or ruling under section 367, 1954 Code, was ever requested as to any of the transactions described herein by Abegg, Suvretta or Cresta, Hevaloid, or any other person.

Meridan owned interests in United Products Co., a machine shop in Tacoma, Wash., and Flexonics Corp., a Chicago corporation. United Products Co. had some 50 to 70 employees at Tacoma. Everett Piano Co. had over 300 employees at South Haven, Michigan. Cavin was president of Meridan in the years 1959 and 1960.

In Cresta's fiscal years ended in 1958, 1959, and 1960 Cavin investigated at least 11 business opportunities for the investment of Cresta's funds with a view to acquiring the stock or the assets of one or more going businesses. No such acquisition was made in those years. Cavin was the sole employee of Cresta in those years.

Hevaloid was a personal holding company in 1956 and 1957. Cresta was a personal holding company in its fiscal years ended in 1958, 1959, and 1960. Cresta was not engaged in trade or business in the United States in those years.

#### OPINION

Werner Abegg, a nonresident alien, was sole stockholder of a Delaware corporation, Hevaloid, which had for a number of years been engaged in business in the United States as owner and lessor of certain patents and machinery. In 1955 its patents expired and it sold the machinery. Thereafter, until liquidated in 1957, its sole assets were cash, securities, receivables, and certain rights in a motion picture. It was then a personal holding company and so characterized itself in its returns for 1956 and 1957. In 1957 Abegg liquidated Hevaloid and had the assets transferred to himself. In the same year he transferred to a Panamanian corporation, Suvretta (now called Cresta) all the securities and other properties he received from Hevaloid and certain additional securities and cash, and he received all the stock of this corporation. He also transferred to it 3,000 shares of stock (of 6,000 shares outstanding) of Meridan Corp., a Rhode Island corporation which controlled certain other active corporations in the United States. Suvretta was a personal holding company in 1957 and during

the years in issue and so designated itself on its returns for the fiscal years ended in 1958 and 1959. In 1958 it was registered as a corporation doing business in New York State.

In docket No. 1572–62 respondent determined that Cresta was not engaged in trade or business in the United States in the fiscal years ended in 1958, 1959, and 1960. If not so engaged it is a foreign corporation taxable under section 881(a) of the Internal Revenue Code of 1954,[2] without allowance of deductions. If engaged in trade or business in the United States it is taxable under section 882 and certain deductions are allowable.

In these fiscal years Cresta paid Cavin salary totaling $46,949.78 and paid $52,017.87 in legal, accounting, travel, and other business expenses. Of this total, $83,815.32 was deducted as expenses allocable to U.S. sources.

Cresta's activities were collecting dividends and interest, managing existing investments, and investigating the acquisition of new investments. Respondent contends that these do not constitute a trade or business.

Abegg transferred to Suvretta (later named Cresta) some $5 million in cash, marketable securities, and other property. As president of Cresta, Cavin made efforts to acquire business ventures in the United States. He investigated at least 11 concerns with a view to having Cresta acquire a substantial stock interest or control. He also managed the activities of Meridan, of which he was also president. Meridan owned interests in Everett Piano Co., at South Haven, Mich., United Products Co., a machine shop in Tacoma, Wash., and Flexonics Corp., a Chicago corporation. Cresta had no employees other than Cavin. Meridan had some 350 or more employees in its branches or subsidiaries. Fifty percent of Meridan's stock was owned by Cresta and 10 percent by Cavin. Cresta contends that through these activities it was engaged in trade or business in the United States.

We have repeatedly held that searching for business opportunities with a view to undertaking them does not constitute engaging in business and that expenses incurred in connection with such investigations are not deductible as ordinary or necessary expenses of a trade

---

[2] All Code references herein are to the Internal Revenue Code of 1954, effective during the taxable years involved, unless otherwise indicated.

SEC. 881. TAX ON FOREIGN CORPORATIONS NOT ENGAGED IN BUSINESS IN UNITED STATES.

(a) IMPOSITION OF TAX.—In the case of every foreign corporation not engaged in trade or business within the United States, there is hereby imposed for each taxable year, in lieu of the taxes imposed by section 11, a tax of 30 percent of the amount received from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income * * *

or business. *George C. Westervelt*, 8 T.C. 1248 (1947); *Dwight A. Ward*, 20 T.C. 332 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955); *Morton Frank*, 20 T.C. 511 (1953); *Frank B. Polachek*, 22 T.C. 858 (1954); and *Radio Station WBIR, Inc.*, 31 T.C. 803 (1959). See also *Richmond Television Corporation* v. *United States*, 345 F. 2d 901 (C.A. 4, 1965). Nor does Cresta's management of its investment in Meridan constitute engaging in business on its own account. *Whipple* v. *Commissioner*, 373 U.S. 193 (1963). Although Cresta had an office in New York with one employee, Cavin, and had qualified to do business in the State of New York, and although Abegg, its sole stockholder, provided advice on his sporadic visits to the United States, and occasional meetings of its board of directors were held in the United States, these were nothing more than planning activities and do not constitute engaging in a trade or business. Cresta's activities as a personal holding company were confined to holding securities and cash and the purchase and sale of investment securities. These activities do not amount to engaging in business. See *Chang Hsiao Liang*, 23 T.C. 1040 (1955).

We conclude that Cresta was not engaged in a trade or business in the United States in any of the fiscal years ended in 1958, 1959, and 1960. It is therefore taxable under section 881 as respondent determined, and not under section 882, of the 1954 Code.

In docket No. 1571-62, respondent determined a deficiency in the income tax liability of Hevaloid Corp. for the taxable year ended December 31, 1957, and notified Cresta that the deficiency, plus interest, would be assessed against Cresta as a transferee of assets of Hevaloid. The notice states:

The reported liquidation of Hevaloid Corporation, the transfer of assets to W. Abegg and the retransfer of such assets by him to Cresta Corporation, S.A. were in substance, component steps in a reorganization within the meaning of section 368(a) of the Internal Revenue Code of 1954. Accordingly, the benefits of section 337 of the Internal Revenue Code of 1954 are not applicable and the capital gains realized on the sale of assets as shown in the 1957 return of Hevaloid Corporation, are includible in gross income.

Since, in substance, Hevaloid Corporation in the course of the reorganization transferred assets to Cresta Corporation, S.A., a foreign corporation and did not secure clearance under section 367 of the Internal Revenue Code of 1954 prior to the transfer, Hevaloid Corporation is denied the benefits of section 361(a) the Internal Revenue Code of 1954. The gains realized on the transfer as computed in Exhibit A are recognized.

The gains referred to in the first paragraph were long-term capital gains in the amount of $932,701.27. The gains referred to in the second paragraph were computed on five stocks and the film described in the findings of fact, and amounted to $267,244.46.

Cresta contends that Hevaloid was completely liquidated and was not reorganized; that it had been in active business as lessor of patents

and machinery; and that such business had come to an end and the corporation was formally liquidated. Petitioner argues that the "re-incorporation" doctrine has no proper application here. Petitioner says that Suvretta did not continue the business of Hevaloid, that its business was new and different, involving the management of a subsidiary, Meridan, which had no connection with Hevaloid, and the search for new businesses for acquisition or investment.

Prior to its liquidation Hevaloid had ceased its active business and was a personal holding company. After the transfers Suvretta was a personal holding company and was not actively engaged in a trade or business. Its function was the same as that of Hevaloid before the transfers.

The petitioner also contends that respondent has not proved a transfer of Hevaloid's assets to Suvretta.

Respondent admits that Hevaloid never transferred property directly to Suvretta, but contends that all the assets owned by Hevaloid immediately prior to its liquidation were transferred to Suvretta indirectly through Abegg as a conduit. In May 1957 Hevaloid distributed to Abegg shares of stock of Brazos River Gas Co., Medallion Petroleum, Ltd., Producing Properties, Inc., Magma Copper Co., and Signal Oil & Gas Co., also, a loan receivable from Perosa Corp. and a film right, and in the same month Abegg transferred identical stocks and poperties to Suvretta. Also, Hevaloid distributed to Abegg $1,500,000 and $160,936.20 in cash in May 1957 and Abegg transferred $1,500,000 and $400,000 in cash to Suvretta in the same month. At the beginning of these transactions Abegg was the sole shareholder of Hevaloid, a personal holding company, and at the completion of the transactions he was sole shareholder of Suvretta, also a personal holding company. All the cash and income-producing assets of Hevaloid were acquired by Suvretta. Hence, respondent says that Suvretta became substantially a continuation of Hevaloid, and the effect of the transactions was a reorganization under section 368(a)(1)(D).[3]

---

[3] SEC 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

\*         \*         \*         \*         \*         \*         \*

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only, if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

\*         \*         \*         \*         \*         \*         \*

(F) a mere change in identity, form, or place of organization, however effected.

156

In 1957 when Abegg proceeded to liquidate Hevaloid, he took the formal steps required to comply with section 337(a) [4] and avoid recognition of gain upon the sale or exchange of its property. In this liquidation the corporation realized gains in the amount of $932,701.27. However, Abegg at the same time transferred all the properties and cash he received from Hevaloid to Suvretta in exchange for its stock. Suvretta was in effect a continuation of the business of Hevaloid in another corporation owned by the same shareholder.

When the stockholders of a corporation liquidate it and transfer the assets to another corporation which continues the business under the same ownership, the effect of the transactions is a reorganization.[5] The liquidation may not be considered an isolated transaction, but must be viewed together with the related transfer to the continuing corporation.[6] It is not essential that the properties be transferred directly by the liquidating corporation to the continuing one; the transfer may be through the stockholders as a conduit.[7]

Under section 368(a)(1)(D), the term "reorganization" includes a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders, is in control of the corporation to which the assets are transferred. Here, all the assets of Hevaloid were transferred to Suvretta, and Abegg, the shareholder of the transferor, was in control of Suvretta.

The statute further requires that stock of the corporation receiving the assets be distributed in a transaction which qualifies under sections 354, 355, or 356. The relevant provision here is section 354 which provides in subsection (a) for nonrecognition of gain or loss, and in subsection (b) provides that subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization under section 368(a)(1)(D) unless the corporation to which the assets are transferred acquires substantially all the assets of the transferor and the stock and properties received by the transferor are distributed in pursuance of the

---

[4] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[5] David T. Grubbs, 39 T.C. 42 (1962) ; John G. Moffatt, 42 T.C. 558 (1964), affd. 363 F. 2d 262 (C.A. 9, 1966) ; James Armour, Inc., 43 T.C. 295 (1964) ; Survaunt v. Commissioner, 162 F. 2d 753 (C.A. 8, 1947), affirming on this point 5 T.C. 665 (1945).

[6] Helvering v. Limestone Co., 315 U.S. 179 (1942) ; Davant v. Commissioner, 366 F. 2d 874 (C.A. 5, 1966), affirming on this point 43 T.C. 540 (1965).

[7] Richard H. Survaunt, 5 T.C. 665, 672 (1945), affirmed on this point 162 F. 2d 753 (C.A. 8, 1947) ; Mark Kleeden, 38 B.T.A. 821 (1938) ; Ethel K. Lesser, 26 T.C. 306 (1956) ; Bard-Parker Co. v. Commissioner, 218 F. 2d 52 (C.A. 2, 1954), affirming 18 T.C. 1255 (1952).

plan of reorganization. Here Suvretta received all the stocks and properties and at least an equal amount of the cash held by Hevaloid, and Suvretta's stock was all distributed to Abegg in pursuance of the plan of reorganization. The plan need not be in writing and a reorganization may include a liquidation of a corporation a party to it. *Lewis* v. *Commissioner*, 176 F. 2d 646 (C.A. 1, 1949), affirming 10 T.C. 1080.

As the court pointed out in *Davant* v. *Commissioner*, 366 F. 2d 874 (C.A. 5, 1966), the intention of Congress in enacting the complete liquidation provisions contemplated that the operating assets would no longer be used by the stockholders to carry on the business as a corporation. Here the assets of Hevaloid are being used by Cresta in the same way as formerly used by Hevaloid. The fact that both were personal holding companies does not require a different conclusion. *Estate of Elise W. Hill*, 10 T.C. 1090, 1095 (1948).

Although Abegg intended to liquidate Hevaloid, he also intended to have the assets which it held transferred to another corporation, Suvretta, which would hold them and continue to manage them as investments. This is a classic example of reorganization as opposed to liquidation. A different situation was involved in *Pridemark, Inc.* v. *Commissioner*, 345 F. 2d 35 (C.A. 4, 1965), reversing in part and affirming in part 42 T.C. 510 (1964), relied upon by the petitioners. The Court of Appeals there expressed the view that to have a liquidation, the corporation must have ceased to be a going concern, or if the enterprise is continued in corporate form, the stockholder must have disassociated himself from it. In the present case the same assets were transferred to a new corporation owned by the same stockholder who was not disassociated from the enterprise of managing the investment of those assets. See also *James Armour, Inc.*, 43 T.C. 295 (1964), and *Ralph C. Wilson, Sr.*, 46 T.C. 334 (1966).

The respondent correctly determined that a reorganization was effected under section 368(a) (1) (D).

Since a reorganization occurred, the tax consequences are to be governed by the provisions of the Code dealing with reorganizations, sections 354 to 368, and not those dealing with liquidations, sections 331 to 346. *Commissioner* v. *Morgan*, 288 F. 2d 676 (C.A. 3, 1961, reversing 33 T.C. 30 (1959), certiorari denied 368 U.S. 836, rehearing denied 369 U.S. 826; *Liddon* v. *Commissioner*, 230 F. 2d 304 (C.A. 6, 1956) ; affirming on this point 22 T.C. 1220, certiorari denied 352 U.S. 824; *David T. Grubbs*, 39 T.C. 42 (1962). It follows that Hevaloid's gain of $932,701.27 realized upon sales of stock is not subject to nonrecognition under section 337 as in a liquidation, but is to be recognized under section 1002.[8]

---

[8] SEC. 1002. RECOGNITION OF GAIN OR LOSS.

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized.

Respondent contends further that if there was a reorganization under section 368(a)(1)(D), Hevaloid in effect transferred all its assets to Suvretta in exchange for Suvretta stock and, as a result, Hevaloid realized a gain of $267,244.46 with respect to the assets except cash and the Perosa receivable. Ordinarily this gain would be subject to nonrecognition under section 361(a),[9] but since no ruling under section 367 [10] was requested, this gain must be recognized. *Texas-Canadian Oil Corporation, Ltd.*, 44 B.T.A. 913 (1941).

The substance of the present section 367 was first enacted as section 112(k) of the Revenue Act of 1932. The purpose of this provision was explained in S. Rept. No. 665, 72d Cong., 1st Sess., 1939–1 C.B. (Part 2) 515, as follows:

Property may be transferred to foreign corporations without recognition of gain under the exchange and reorganization sections of the existing law. This constitutes a serious loophole for avoidance of taxes. Taxpayers having large unrealized profits in securities may transfer such securities to corporations organized in countries imposing no tax upon the sale of capital assets. Then, by subsequent sale of these assets in the foreign country, the entire tax upon the capital gain is avoided. For example, A, an American citizen, owns 100,000 shares of stock in Corporation X, which orginally cost him $1,000,000 but now has a market value of $10,000,000. Instead of selling the stock outright A organizes a corporation under the laws of Canada to which he transfers the 100,000 shares of stock in exchange for the entire capital stock of the Canadian company. This transaction is a nontaxable exchange. The Canadian corporation sells the stock of Corporation X for $10,000,000 in cash. The latter transaction is exempt from tax under the Canadian law and is not taxable as United States income under the present law. The Canadian corporation organizes Corporation Y under the laws of the United States and transfers the $10,000,000 cash received upon the sale of corporation X's stock in exchange for the entire capital stock of Y. The Canadian corporation then distributes the 'stock of Y to A in connection with a reorganization. By this series of transactions, A has had the stock of X converted into cash and now has it in complete control.

While it is probable that the courts will not hold all transactions of this nature to be tax-free exchanges, the committee is convinced that the existing law may afford opportunity for substantial tax avoidance. To prevent this avoidance the bill withdraws the transaction from the operation of the nonrecognition sections where a foreign corporation is a party to the transaction, unless prior to the exchange the Commissioner is satisfied that the transaction is not in pursuance of a plan having as one of its principal purposes the avoidance of taxes.

---

[9] SEC. 361. NONRECOGNITION OF GAIN OR LOSS TO CORPORATIONS.

(a) GENERAL RULE.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[10] SEC. 367. FOREIGN CORPORATIONS.

In determining the extent to which gain shall be recognized in the case of any of the exchanges described in section 332, 351, 354, 355, 356, or 361, a foreign corporation shall not be considered as a corporation unless, before such exchange, it has been established to the satisfaction of the Secretary or his delegate that such exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes. For purposes of this section, any distribution described in section 355 (or so much of section 356 as relates to section 355) shall be treated as an exchange whether or not it is an exchange.

It will be noted that under this provision a taxpayer acting in good faith can ascertain prior to the transaction, by submitting his plan to the Commissioner, that it will not be taxable if carried out in accordance with the plan. * * *

We sustain respondent's determination of the deficiency against Hevaloid.

We next consider whether Cresta is liable as a transferee for this deficiency. Cresta contends that it is not liable as a transferee of assets of Hevaloid for the deficiency. It says that Abegg, not Cresta, is the transferee and that Cresta is not liable as a transferee of a transferee since respondent has not proved that Abegg was insolvent and unable to pay the deficiencies. It alleges that Abegg was able and willing to pay any liability of Hevaloid for taxes and that respondent has determined this deficiency against the wrong party as transferee. It is stipulated that throughout the year 1957 Abegg's U.S. assets exceeded his liabilities by at least $2 million.

Where the assets of a corporation have been transferred to another for stock which is issued to the stockholders of the transferor, leaving the transferor without any property to meet its tax liabilities, the respondent may have a choice of proceeding against the assets in the hands of the transferee corporation or the stock in the hands of the stockholders, or against both.

In *Woodley Petroleum Co., et al.*, 16 B.T.A. 253 (1929), deficiencies in tax were determined against Old Farmers Co. The assets of the taxpayer were purchased by Woodley for its stock which was distributed directly to the stockholders of the taxpayer. Old Farmers was dissolved. The Commissioner proceeded against both the stockholders and Woodley. We sustained the determination against Woodley and withheld decision as to the liabilities of the stockholders.

In *Warner Collieries Co. of Delaware*, 36 B.T.A. 54 (1937), affirmed per curiam 107 F. 2d 1023 (C.A. 6, 1939), the petitioner-transferee contended that the tax should be collected from the transferor's stockholders to whom the petitioner's stock had been distributed. We there held that respondent is not precluded from proceeding against the transferee of the assets of the transferor even if other assets distributed to the stockholders were subject to a like process.

In *Bates Motor Transport Lines, Inc.*, 17 T.C. 151 (1951), affd. 200 F. 2d 20 (C.A. 7, 1952), the respondent determined deficiencies against a transferor and notified the transferee corporation and its sole stockholder, who had been the principal stockholder of the transferor, that each was liable as transferee for such deficiencies. The transferee corporation admitted liability as a transferee. The stockholder denied such liability, claiming that no assets were transferred to him and that his exchange of stock in the transferor for stock in the transferee afforded no basis for a conclusion that he was a transferee. We sustained the

determination that the stockholder, also, was liable as a transferee. See also *Concrete Industries Co.*, 19 B.T.A. 655 (1930), and *Fairless* v. *Commissioner*, 67 F. 2d 475, 477 (C.A. 6, 1933), affirming 19 B.T.A. 304 (1930), where, in holding shareholders liable as transferees, the court observed that the transferee corporation might also be held liable.

The matter of Abegg's solvency and his ability and alleged willingness to pay any tax liability of Hevaloid is immaterial. In our view he served as a conduit for the transfer of Hevaloid's assets to Suvretta. Aside from the cash, there were identified stocks with a stipulated fair market value of $435,259.05 owned by Hevaloid which were received by Suvretta in exchange for its stock. The tax deficiency was less than this amount. The respondent may follow these assets into the hands of the transferee, Suvretta (now Cresta), and is not obliged to examine the solvency of Abegg or to proceed against him before proceeding against Cresta. We conclude that Cresta is liable as a transferee of Hevaloid for the deficiencies determined against Hevaloid.

In docket No. 1570–62, respondent determined that Abegg realized long-term capital gains in the amount of $64,434.88 in 1958 from the transfer of securities to Cresta. The notice of deficiency stated:

You were present in the United States for more than 90 days during the taxable year. On February 20, [sic] 1958 you contributed various securities to Cresta Corporation, S.A., a foreign corporation of which you are the sole shareholder. This is treated as an exchange. You did not request clearance under section 367 of the Internal Revenue Code of 1954 prior to the exchange. The gains realized as shown below are recognized gains taxable to you under the provisions of section 871(a)(2) and section 871(b) of the Internal Revenue Code of 1954.

The gains were computed on the transfer of 50,680 shares of Brazos River Gas Co. and 4,250 shares of General American Oil Co., the fair market values of which were in excess of their adjusted bases. The stipulated facts show that at the same time Abegg also transferred 12,650 shares of Magma Copper Co. which had a fair market value considerably less than the adjusted basis to Abegg. The adjusted bases of the three stocks taken together was $1,448,473.62 and the stipulated fair market value was $661,013, or less than one-half of the stipulated bases.

Respondent contends that the transfer in question was "in effect" an exchange under section 351 [11] and, accordingly, that the gain real-

---

[11] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) RECEIPT OF PROPERTY.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

    (1) gain (if any) to such recipient shall be recognized, but not in excess of—
        (A) the amount of money received, plus
        (B) the fair market value of such other property received; and
    (2) no loss to such recipient shall be recognized.

ized upon the transfer of the appreciated stocks (Brazos River Gas Co. and General American Oil Co.) aggregating $64,434.88, is to be recognized under sections 1002 and 871(a)(2)(B) because section 367 was not complied with, and the loss realized upon the transfer of the depreciated stock (Magma Copper Co.) in the amount of $851,895.50, is not to be recognized inasmuch as section 367 provides for the recognition of "gain" and not "net gain."

Petitioner Abegg contends that the transfer in question did not constitute an exchange within the meaning of section 351 and consequently that section 367 is not applicable. He further argues that if the transfer is held to be an exchange under sections 351 and 367, he realized no "gain" by reason of the transfer of the stocks but rather a loss in the amount of $787,460.62, and hence there was no gain to be recognized under section 367.

The basic question is whether the transfer by Abegg to Suvretta on February 26, 1958, is *to be treated* as an exchange of property for stock within the meaning of section 351, notwithstanding, as stipulated by the parties, "Suvretta did not issue its stock or any other property to Abegg in exchange therefor" and the transfer of the stocks in question was "recorded on the books of Suvretta as a contribution to capital."

It is apparently respondent's position that the fact that no additional stock of Suvretta (Cresta) was issued to Abegg on the occasion of this transfer is immaterial inasmuch as Abegg already owned all of the outstanding stock of Suvretta and the issuance of additional stock would have been a useless gesture. In support of his position, respondent refers to Rev. Rul. 64–155, 1964–1 C.B. 138,[12] and the cases of *King* v. *United States*, 79 F. 2d 453 (C.A. 4, 1935), and *Commissioner* v. *Morgan, supra,* cited therein. The revenue ruling is, of course, not controlling on us here, *W. Palmer Dixon*, 381 U.S. 68, 73 (1965); *D. B. Anders*, 48 T.C. 815 (1967), and the *King* and *Morgan* cases are distinguishable.

In *Commissioner* v. *Morgan, supra,* the crucial question was whether the transfer by one corporation of all its operating assets to another corporation constituted a complete liquidation under section 115(c) of the Internal Revenue Code of 1939, or a reorganization under section 112 (b)(3) and (c)(1) of the 1939 Code, where there had been

---

[12] Rev. Rul. 64–155, 1964—1, C.B. (Part 1) 138. Foreign corporations.

X, a domestic corporation, proposes to contribute appreciated property to Y, an existing wholly-owned foreign subsidiary. Although X will not receive any additional Y shares, the transaction will be considered an exchange of property for stock described in section 351 of the Internal Revenue Code of 1954. Compare *King* v. *United States*, 10 Fed. Supp. 206 (1935), affirmed 79 Fed. (2d) 453 (1935) ; *Commissioner* v. *Walter L. Morgan, et ux.*, 288 Fed. (2d) 676 (1961), certiorari denied 368 U.S. 836 (1962). Consequently, section 367 of the Code will be applicable and gain recognized to X corporation to the extent of the appreciation in value of the contributed property unless it is previously established that the proposed transaction is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.

no actual exchange of stock and all the stock of both the transferor and the transferee corporations was owned by the same person. The U.S. Court of Appeals held that an actual physical exchange of stock was not necessary to the establishment of a reorganization where all of the stock of both the transferor corporation and the transferee corporation was owned by the same party. In *Morgan* the court was concerned with the question whether a transfer by a corporation consituted a liquidation or a reorganization; it was not concerned with the question whether an actual exchange of stock was essential to constitute a transfer by an individual such as we have here, under section 351.

*King* v. *United States, supra,* involved a question of basis under section 204(a) (2) and (8) of the Revenue Act of 1926.[13] In July 1921, Berliner, who then owned certain stock in both a British and an American corporation, organized a new corporation and transferred his British stock to it in exchange for substantially all of the stock of the new corporation. Within 30 days he also transferred his stock in the American corporation to the new corporation, without additional stock issuance or other consideration. The reason the American stock was not transferred at the same time the British stock was transferred was not due to design but because the certificate for the American stock was not immediately at hand. The new corporation sold the American stock in 1927. It was subsequently dissolved and all its assets transferred to plaintiff. She paid the tax assessed against it and sued for a refund. Plaintiff claimed the stock in question represented *paid-in surplus* and the basis was the fair market value as of the date it was transferred to the new corporation. The Government claimed the transfer was in connection with a transaction described in section 203(b)(4) of the Revenue Act of 1926 (the predecessor of section 351 of the 1954 Code) and the basis was that of the transferor as provided by section 204(a)(8) of the Revenue Act of 1926.

---

[13] BASIS FOR DETERMINING GAIN OR LOSS, DEPLETION, AND DEPRECIATION.

SEC. 204 (a). The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. \* \* \*

\* \* \* \* \* \* \*

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made;

The trial court expressed the view that, as applied in that case, the issuance of additional stock to one who already owned all of the stock of the transferee corporation was not material since the value of all the stock held by him would remain substantially the same irrespective of the mere number of shares, and that in a financial sense it would do no great violence to the statute *to treat* the transaction *in substance* as the issuance of securities for the property transferred. The court also found, however, that the failure to transfer the American stock at the same time the British stock was transferred was due to accident and not design, and that

it is fairly inferable * * * that it was within the original contemplation of Berliner to transfer not only the stock in the British corporation but also that in the American corporation to his new family corporation when organized, and the stock that was issued to him therefor by the Virginia corporation was really intended to be for the stock shortly subsequently as well as that contemporaneously transferred.

The appellate court agreed this was a fair inference and necessarily followed from the facts admitted, but was also of the opinion the inference was not material to a proper decision of the issue involved, stating, in part:

As was well reasoned by the judge below, the issuance of additional stock in the transferee corporation to the man who already owned all of the stock would in no way have affected the value of the stock already held by him, while owned by him, and the conclusion is inescapable that the transaction must be treated in substance as the issuance of securities for property transferred. * * *

Both courts referred to the legislative history of the statutes involved and the enactment of section 113(a)(8) of the Revenue Act of 1932 (the predecessor of section 362(a) of the 1954 Code), subsequent to the taxable year involved therein, as indicating the intention of Congress to impose the income tax on the whole of the profits arising after March 1, 1913, from the appreciated value of the property when sold, irrespective of the continuity of ownership when the latter was broken by transfers without consideration. Under these statutes (secs. 113(a) (8) and 362(a), *ibid*), the basis would be that of the transferor whether paid-in surplus, a contribution to capital, or transferred in connection with a transaction described in section 351.

In our opinion neither the *Morgan* nor the *King* case is controlling on the issue presented here. We are not concerned with whether the transfer of the stock in question constituted a reorganization or with a question of basis. The question here is whether there was in fact an "exchange" as provided by section 351. We do not think there was. The stock transferred by Abegg to Suvretta on February 26, 1958, was not a part of the assets transferred by Hevaloid to Abegg and by Abegg to Suvretta in May 1957. It was never owned by Hevaloid but was the separate property of Abegg. It was transferred 9 months after the

reorganization between Hevaloid and Suvretta had taken place and there is not the slightest evidence that the transfer of the stock here in question was intended to be included in that reorganization. We recognize that where, as in the *King* case, the subsequent "contribution to capital" is a part of the original plan section 351 may be applicable, but such is not the case here. In our opinion, there is no justification to extend the rulings in the *Morgan* and *King* cases to the facts of the present case, contrary to the plain and unambiguous language of section 351.

We hold that the securities transferred by Abegg to Suvretta in February 1958 constituted a contribution to capital and that section 351 is not applicable. In view of the foregoing, we need not determine whether, if section 351 were applicable, Abegg would be taxable on the gross gains without benefit of offsetting losses on the securities transferred.

*Decisions will be entered under Rule 50.*