MARK E. DEGROFF AND LOVETA S. DEGROFF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2260–68. Filed January 26, 1970.

*Lowry McKee*, for the petitioners.
*Harold Friedman*, for the respondent.

64

68

RAUM, *Judge:* Petitioner Mark E. DeGroff is an inventor who has been engaged in the development and exploitation of therapeutic devices. The first such device of any consequence was the so-called Medcolator, which was marketed by a partnership in which DeGroff and his wife each had a 50-percent interest. In 1955 he invented another device named the Medco-sonlator, and in that year three corporations were organized, the stock in each of which was owned equally by both spouses. One was a manufacturing corporation (Medco Mfg.) which produced the Medcolator, the Medco-sonlator, and various other devices invented by DeGroff. The second was a selling corporation (Medco Products), which promoted and sold the Medcolator and other products invented by DeGroff, except the Medco-sonlator. The third was also a selling corporation (Medco Electronics), which promoted and sold the Medco-sonlator. Although separate records were kept for each corporation, their affairs in respect of one another appear to have been conducted in an informal and rather loose manner. The term "Medco" was the unifying descriptive word that characterized the entire enterprise, and the great bulk of the gross receipts was attributable to products which embodied that term in their names. The Medco-sonlator turned out to be the most profitable product, and the DeGroffs decided informally to combine the activities of both selling corporations in a single corporation as of the close of November 30, 1963, the end of the fiscal year of both Medco Products and Medco Electronics. The unification was achieved by having Medco Products take over all of the activities and functions of Medco Electronics as of December 1, 1963. No formal transfer was made, but all the functions and activities of Medco Electronics were continued without a break by Medco Products in an identical manner with the same personnel. The only change was a purely formal one in that invoices and other

records were issued in the name of Medco Products, and bank accounts and other records were maintained in the name of but a single corporation, Medco Products.

At the time of the combination of both these corporations Medco Electronics had accumulated earnings and profits in the amount of $124,030, and, in connection with the merger of their activities, the DeGroffs received distributions in the full amount of such surplus. Had there been no transfer of Medco Electronics' functions to Medco Products, there is no serious question that such distributions would have been treated as dividends to the DeGroffs, taxable as ordinary income. Is a different result called for merely because such earnings and profits were siphoned out of the enterprise in the manner described above? We hold that the answer must be in the negative and that the determination of deficiency must be sustained.

Petitioners' contention is that there was a liquidation of Medco Electronics and that the amount received by them represents merely payment for their Medco Electronics stock, with the consequence that the net profit reflected therein is taxable only at the more favorable capital gains rates. They rely upon sections 331(a) and 346(a)(1) of the 1954 Code.[3] If the transaction herein were indeed simply a liquidation of Medco Electronics their position would be impregnable. But this case involves much more than a mere "liquidation." For, simultaneously with the "liquidation," the entire business of Medco Electronics was transferred to Medco Products, a corporation in which the stock was owned in the same proportions by the same persons who owned the stock of Medco Electronics, and the entire corporate business of Medco Electronics was thereafter carried on by Medco Products without interruption in an identical manner. In the light of the facts appearing in this record we agree with the Government that there was here a corporate reorganization rather than a mere liquidation and that the distributions to the stockholders in connection therewith must be treated as taxable dividends where such distributions are

---

[3] SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS.
(a) GENERAL RULE.—
(1) COMPLETE LIQUIDATIONS.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
(2) PARTIAL LIQUIDATIONS.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.
(b) NONAPPLICATION OF SECTION 301.—Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property in partial or complete liquidation.
SEC. 346. PARTIAL LIQUIDATION DEFINED.
(a) IN GENERAL.—For purposes of this subchapter, a distribution shall be treated as in partial liquidation of a corporation if—
(1) the distribution is one of a series of distributions in redemption of all of the stock of the corporation pursuant to a plan * * *

supported by accumulated corporate earnings and profits. Cf. *John G. Moffatt*, 42 T.C. 558, affirmed 363 F. 2d 262 (C.A. 9), certiorari denied 386 U.S. 1016; *Davant* v. *Commissioner*, 366 F. 2d 874 (C.A. 5), affirming in this respect 43 T.C. 540, 568–572, certiorari denied 386 U.S. 1022, rehearing denied 389 U.S. 893; *James Armour, Inc.*, 43 T.C. 295.

The statute is complicated, but a careful study thereof leads to the foregoing conclusion. The critical provisions are set forth in sections 354(a) and (b), 356(a)(1) and (2), and 368(a)(1) of the Code. Section 368(a)(1)[4] contains the definition of a reorganization, and sections 354 and 356,[5] to the extent relevant here, spell out the operative

---

[4] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

  (a) REORGANIZATION.—

    (1). IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

      *        *        *        *        *        *        *

      (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

      *        *        *        *        *        *        *

      (F) a mere change in identity, form, or place of organization, however effected.

[5] SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.

  (a). GENERAL RULE.—

    (1). IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

      *        *        *        *        *        *        *

  (b) EXCEPTION.—

    (1) IN GENERAL.—Subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization within the meaning of section 368(a)(1)(D), unless—

      (A) the corporation to which the assets are transferred acquires substantially all of the assets of the transferor of such assets; and

      (B) the stock, securities, and other properties received by such transferor, as well as the other properties of such transferor, are distributed in pursuance of the plan of reorganization.

SEC. 356. RECEIPT OF ADDITIONAL CONSIDERATION.

  (a) GAIN ON EXCHANGES.—

    (1) RECOGNITION OF GAIN.—If—

      (A) section 354 or 355 would apply to an exchange but for the fact that

      (B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,

then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

    (2). TREATMENT AS DIVIDEND.—If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

consequences of a reorganization. In terms of the present case, the Government contends, and we hold, that there was a "reorganization" under section 368(a)(1)(D), with the result that under section 356 (a)(2), an exchange in a reorganization having the effect of the distribution of a dividend must be treated as a dividend to the extent recognized and to the extent that it is supported by undistributed corporate earnings and profits.

If there were a reorganization as defined in section 368(a)(1)(D), as contended by the Government, we have no doubt that the distributions before us must be treated as a dividend under section 356(a)(2), and we reject petitioners' suggestion that *Moffatt*, *Davant*, and *Armour* [6] may not represent sound law in this connection. We accept these cases on this issue and proceed to consider petitioners' principal contention herein that there was no reorganization under section 368 (a)(1)(D).

Section 368(a)(1)(D) provides:

SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—
    (1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

\*      \*      \*      \*      \*      \*      \*

    (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; \* \* \*

There was here a transfer of assets by Medco Electronics to Medco Products—albeit an informal one—and immediately after the transfer the two sole stockholders were in complete control of the transferee. So much is not disputed, and the requirements set forth in section 368(a)(1)(D) appear to have been met.[7] However, section 368(a)(1)

---

[6] Petitioners place considerable reliance in this respect upon *Commissioner* v. *Gordon*, 391 U.S. 83, a case dealing with an entirely different problem and different statutory provisions. We think it has no controlling effect here.

[7] To be sure, there was no distribution of stock or securities in exchange for the interests transferred; however, since the DeGroffs already owned all of the stock in Medco Products any issuance of additional stock would have been meaningless, and they do not contend that the failure to issue any such additional stock would render sec. 368 (a)(1)(D) inapplicable. Indeed it has already been well established that no such exchange for their interest is required in such circumstances. See *Ralph C. Wilson, Sr.*, 46 T.C. 334, 342–344; *South Texas Rice Warehouse Co.*, 43 T.C. 540, 568–570, affirmed 366 F. 2d 890 (C.A. 5); *James Armour, Inc.*, 43 T.C. 295, 307; *Commissioner* v. *Morgan*, 288 F. 2d 676, 679–680 (C.A. 3), certiorari denied 368 U.S. 836.

(D) incorporates section 354 by reference, and the critical disagreement between the parties is whether Medco Products acquired "substantially all" of the assets of Medco Electronics so as to satisfy the requirement of section 354(b) (1) (A).

In several recent cases we have considered the meaning of "substantially all" of the assets as used in section 354(b) (1) (A). In *John G. Moffatt*, 42 T.C. 558, 578, affirmed 363 F. 2d 262(C.A.9), certiorari denied 386 U.S. 1016, we noted that "it must be remembered that the 'substantially all' requirement 'has been subjected to [a] construction which in effect applies a continuity test rather than mere blind percentages.'" In holding that section 354(b) (1) (A) had been satisfied notwithstanding that certain nonoperating assets had been distributed to the stockholders, we found—

[t]hat the necessary continuity was present here * * *. The * * * [transferor corporation's] business was transferred to the new company, bearing a similar name and controlled by the same persons. It employed the same personnel, used the same facilities, had the same address, and dealt with the same clients as though nothing had occurred apart from the minor change in name of the business. There was here the most complete continuity of enterprise—the very kind of continuity that is basic to a corporate reorganization with its concomitant nonrecognition of gain or loss except for the distribution of "boot."

See also *Werner Abegg*, 50 T.C. 145, 157; *Ralph C. Wilson, Sr.*, 46 T.C. 334, 345–348; *James Armour, Inc.*, 43 T.C. 295, 308–310.

In the case before us, it is perfectly clear that as a practical matter the business of Medco Electronics was completely taken over by Medco Products. Prior to November 30, 1963, Medco Products and Medco Electronics had conducted their businesses jointly; they had marketed their products through an overlapping sales network and had distributed them through the same office staff. The transfer of the Medco-sonlator sales operation to Medco Products merely allowed the corporate structure of the DeGroffs' enterprise to conform to the way in which its daily operations were already organized. Thus, the transfer had not one significant effect upon the daily activities of the DeGroffs' enterprise. The sale and distribution of the Medco-sonlator continued to be handled by the same personnel, at the same location, and in the same manner as they had been before the transfer. Furthermore, the similarity of the names of the two corporations and the fact that the trade name, "Medco-sonlator," rather than the name of the corporation selling it, was featured on the DeGroffs' advertising circulars enabled Medco Products to continue to benefit from whatever reputation the Medco-sonlator previously enjoyed.

However, petitioners contend that the "substantially all" requirement has not been satisfied since Medco Electronics' most valuable assets, its rights under its exclusive license agreement with DeGroff,

its sales network, and the availability of DeGroffs' services, were not "transferred" to Medco Products. Although none of these assets appeared on Medco Electronics' balance sheet, it is conceded by both parties, and we agree, that intangible assets not appearing on the transferor corporation's balance sheet may properly be considered in determining whether "substantially all" of its assets have been transferred. *Ralph C. Wilson, Sr.*, 46 T.C. at 345–348; *John G. Moffatt*, 42 T.C. at 579. Nevertheless, to the extent that Medco Electronics had any rights in these intangibles it is our conclusion on this record that Medco Products succeeded to such rights in full.

Petitioners' principal contention is that Medco Electronics' exclusive license agreement with Mr. DeGroff in respect of the Medco-sonlator was nonassignable, that it was of substantial value, and that it was not in fact transferred to Medco Products. We think that this argument paints a false picture of the situation.

By May 1958, when the license agreement was signed, the right to sell the Medco-sonlator had already become a valuable commercial asset. During the fiscal years ending November 30, 1956, 1957, and 1958, Medco Electronics' sales of the Medco-sonlator totaled $357,082.64, $380,443.45, and $494,002.65, respectively. Yet under the terms of the license agreement, DeGroff granted Medco Electronics the exclusive right to manufacture and to sell the Medco-sonlator without reserving to himself the right to receive royalty payments in return.[8] We simply cannot take at face value an instrument which purports to grant the exclusive rights to such a valuable commercial asset in return for a payment of a stated consideration of only $10.[9] Moreover, despite the exclusive nature of the agreement, Medco Mfg. continued to make or assemble the Medco-sonlator just as it had for the past few years and just as it continued to do at the time of the trial herein. Nothing in the record even suggests that there was a sublicense to Medco Mfg. The license agreement was obviously not entered into at arm's length and clearly did not in fact govern and was not intended to govern the business relationships between Medco Electronics and DeGroff. The DeGroffs conducted their enterprise in a loose and informal manner, and it is all too clear to us that Medco Products succeeded

[8] As a 50-percent owner of Medco Mfg., Mr. DeGroff was benefitted by Medco Electronics' efforts to market a product which the manufacturing corporation produced. But since the agreement granted Medco Electronics the exclusive right to manufacture the Medco-sonlator, the terms of the license ageement did not assure him of such a benefit.

[9] The only other consideration set forth was the undertaking by Medco Electronics to use its best efforts in the commercial exploitation of the device. But since DeGroff had theoretically parted with all interest in the patent and had reserved no royalty it is difficult to see how this undertaking was of any practical value to him. Of course, he would benefit from the success of the Medco-sonlator as a 50-percent stockholder of Medco Electronics. But it was obviously to the advantage of both DeGroffs as stockholders to exploit the Medco-sonlator through Medco Electronics, and the agreement thus gave Mr. DeGroff nothing of consequence in this connection that he did not already have.

to whatever rights Medco Electronics may have had in respect of the Medco-sonlator. Certainly, Medco Products continued to sell the Medco-sonlator in the same manner that it had previously been marketed. DeGroff's testimony suggested that Medco Products was an infringer in this respect and that he merely permitted it to infringe. We heard that testimony, and the short answer is that we don't believe it. The simple truth lies in the informal manner in which the entire enterprise was conducted, and the fact that Medco Products was assigned the task of selling the Medco-sonlator after November 30, 1963, just as Medco Electronics had carried on before.

Moreover, even if the license agreement were to be taken at face, it is highly questionable whether it was nonassignable. To be sure, it provided that it was "personal to the parties," but it also stated that it would be "binding and inure to the benefit of the parties and to their successors in interest, assigns and transferees." Obviously, as the corporate life of the Medco Electronics was allowed to be extinguished by petitioners, they, as sole stockholders of Medco Electronics at the very least became "successors in interest" to the license agreement, and, to the extent that it had any vitality it is clear to us that they made it available informally to Medco Products.[10] We reject as incredible the notion that Medco Products was an "infringer."

Similarly, to the extent that Medco Electronics may have had any other intangible property rights that were not formally transferred, we are of the opinion that Medco Products succeeded thereto in the same kind of informal manner. Certainly, petitioners who have the burden of proof, have not convincingly shown otherwise. If such assets were not transferred, where did they go, and where are they now? Thus far, no answer has been suggested.

We hold that the "substantially all" requirement has been satisfied. The only assets which did not go over to Medco Products were distributions to petitioners that must be charged to them as dividends under section 356(a)(2).

---

[10] At the trial herein, Mr. DeGroff suggested that he deliberately refrained from making a formal assignment of the right to market the Medco-sonlator because he wanted to remain free to assign rights under the Medco-sonlator patent in the event that differences arose between him and his wife. This explanation strikes us as spurious. The record contains not the slightest suggestion of marital or business differences between the DeGroffs or any anticipation of such differences in the future. Furthermore, if significant difficulties between the DeGroffs had been regarded as a possibility at the time when the Medco-sonlator was transferred to Medco Products, Mrs. DeGroff, a 50-percent stockholder of Medco Electronics, would hardly have been willing to go along with her husband's plan. Moreover, Mr. DeGroff's purported plan could not have achieved its alleged objective in any event. As coowner of Medco Electronics, Mrs. DeGroff, along with her husband, succeeded to whatever rights Medco Electronics had under the license agreement and would have been in a position to halt Mr. DeGroff's independent activities.

The foregoing discussion has been predicated upon the assumption that the transfer of Medco Electronics' business to Medco Products must qualify as a reorganization under section 368(a)(1)(D) in order to bring 356(a)(2) into play. But we take note of another possibility, namely, that if the transfer was a reorganization under section 368(a)(1)(F), fn. 4, *supra*, the provisions of section 356(a)(2) would similarly be triggered, and under (F) there is no "substantially all" requirement. Moreover, the decisions of two Courts of Appeals strongly support the conclusion that there was an (F) reorganization here. *Davant* v. *Commissioner*, 366 F. 2d 874, 883–884 (C.A. 5); *Estate of Stauffer* v. *Commissioner*, 403 F. 2d 611 (C.A. 9), reversing 48 T.C. 277; *Associated Machine* v. *Commissioner*, 403 F. 2d 622 (C.A. 9), reversing 48 T.C. 318. To be sure, the Government has not contended that there was an (F) reorganization here, but it would nevertheless be open to us to apply (F),[11] for, as stated in *Wilkes-Barre Carriage Co.*, 39 T.C. 839, 845-846, affirmed 332 F. 2d 421 (C.A. 2), "the rule is well established that a deficiency may be approved on the basis of reasons other than those relied upon by the Commissioner or even where his reasons may be incorrect. *Blansett* v. *United States*, 283 F. 2d 474, 478–479 (C.A. 8); *Bernstein* v. *Commissioner*, 267 F. 2d 879, 881–882 (C.A. 5); *Acer Realty Co.* v. *Commissioner*, 132 F. 2d 512, 514–515 (C.A. 8); *Alexander Sprunt & Son* v. *Commissioner*, 64 F. 2d 424, 427 (C.A. 4); *Crowell* v. *Commissioner*, 62 F. 2d 51, 53 (C.A. 6); *J. & O. Altschul Tobacco Co.* v. *Commissioner*, 42 F. 2d 609, 610 (C.A. 5); *Hughes* v. *Commissioner*, 38 F. 2d 755, 757 (C.A. 10); *John L. Chipley*, 25 B.T.A. 1103, 1106; *Edgar M. Carnrick*, 21 B.T.A. 12, 21; cf. *Helvering* v. *Rankin*, 295 U.S. 123, 132–133."

However, when *Stauffer* and *Associated Machine* were before us we construed (F) differently, and since we have concluded that (D) is applicable, we find it unnecessary now to reexamine our views as to (F). In the circumstances we do not pass upon this point.

*Decision will be entered for the respondent.*

---

[11] We note that in *Davant* the Court of Appeals decided that (F) was applicable, although the point was not urged in that court by the Government, and this Court carefully avoided passing upon it when the case was here.