Estates of John L. Bell, Deceased and Lauvonnia C. Bell, Deceased, John Lewis Bell, Jr., and Marion National Bank of Marion, Co-executors of Both Estates v. Commissioner.
Estate of Bell v. Commissioner
Docket Nos. 1554-69, 2643-69.
United States Tax Court
T.C. Memo 1971-285; 1971 Tax Ct. Memo LEXIS 46; 30 T.C.M. (CCH) 1221; T.C.M. (RIA) 71285; November 8, 1971, Filed. *46 Bell was the sole owner of the stock of three corporations, Fibre, Coal, and Buildings. In 1964 Coal sold all of its properties to Fibre and then liquidated, distributing the sale proceeds and other cash to Bell. In 1965 Buildings sold all of its properties to Fibre and then liquidated distributing the sale proceeds and other cash to Bell. Held: The purported liquidations of Coal and Buildings were in fact reorganizations with Fibre as defined in section 368(a)(1)(D). Held, further: The cash distributed to Bell constituted dividend income only to the extent provided in section 356(a)(2), measured by the earnings and profits of Coal and Buildings at the times of the distributions. Robert E. Johnson, Suite 1200, 111 Monument Circle, Indianapolis, Ind., for the petitioners. James J. McGrath, for the respondent. 1222 IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined the following deficiencies in petitioners' income taxes: Sec. 6653(a)
Docket No.
Year
Deficiency
Penalty
Total
1554-69
1964
$ 65,458.44
$ 3,272.92
$ 68,731.36
2643-69
1965
244,597.39
12,229.87
256,827.26
1966
109,338.51
5,466.93
114,805.44
All but two of the issues raised by the notice of deficiency and by the pleadings have been settled including respondent's concession of the inapplicability of the addition to tax imposed by section 6653(a) of the Internal Revenue Code of 1954. The two remaining issues *49 concern the proper treatment of amounts received in 1964 and 1965 in purported liquidation of two corporations which were wholly owned by petitioners' decedent. The petitioners claim that the amounts received should be treated as payment in exchange for the decedent's stock under section 331 and that the decedent was entitled to treat the amount received in excess of his basis for the stock as long-term capital gain. On the other hand respondent has determined that the decedent's two corporations were in the process of reorganization and that the amounts received by the decedent in 1964 and 1965 were dividends taxable as ordinary income. Findings of Fact Petitioners are John L. Bell, Jr., and the Marion National Bank of Marion who are the duly appointed, qualified, and acting co-executors of the estates of John L. Bell and Lauvonnia C. Bell. John L. Bell, Jr., resides in Marion, Ind., and the Marion National Bank of Marion has its principal place of business in Marion, Ind. John L. Bell died on August 2, 1968, and Lauvonnia C. Bell died on July 28, 1969. For calendar years 1964 and 1965 John L. and Lauvonnia C. Bell, as husband and wife, filed joint personal income tax returns *50 with the district director of internal revenue, Indianapolis, Ind. Hereafter, we shall use Bell to refer to John L. Bell. After 1956 and at all relevant times, Bell owned all of the outstanding stock of three corporations: Bell Fibre Products Corporation (Fibre), Bell Coal Company, Inc. (Coal), and Bell Buildings, Inc. (Buildings). Fibre is an Indiana corporation engaged in the manufacture of corrugated containers. Since its reorganization in 1940 Fibre has steadily increased in size both in terms of sales and manufacturing capacity. For 1964 and 1965 Fibre's earnings and profits accumulated after February 28, 1913, and not distributed were in excess of $7,000,000. Coal had been organized by Bell's parents and maternal grandfather in 1910. For many years it had operated a successful retail coal business, but its volume of coal business steadily declined during the 1950's. In 1961, Coal discontinued entirely its coal business because of continuing losses. At that time Coal's sole source of revenue was from the rental of three parcels of real estate to Fibre. In the early 1960's Coal looked for ways of disposing of its real estate holdings but was unsuccessful in its search. *51 On August 24, 1964, Fibre made a written offer to Coal to purchase the three parcels of real estate from Coal for $15,500. Fibre had placed an office building on one of these properties which it had been renting and was using the other two for parking facilities. Consequently, it did not want the properties to be sold to an unfriendly purchaser. On August 31, 1964, the board of directors of Coal adopted a plan of complete liquidation and authorized the sale of the three parcels of real estate as a part of the plan. On the same day, Bell, as Coal's only shareholder, approved the plan. Fibre purchased the real estate for $15,500 which the parties have agreed was their fair market value at the time of sale. By the end of 1964 Coal had liquidated all of its assets and liabilities. On December 31, 1964, Coal distributed to Bell the proceeds from the sale of the real estate and other cash on hand totaling $29,854.60. Coal's earnings and profits accumulated after February 28, 1913, and not distributed as of August 30, 1964, amounted to $11,963.82 and remained unchanged through December 31, 1964. Buildings was organized in 1947 by Bell's mother and father to own, manage, lease 1223 *52 and otherwise deal in real estate. Prior to 1965 Buildings owned commercial real estate in downtown Marion, Ind., and residential property toward the suburbs. The commercial properties were in need of modernization, and Buildings would have had to acquire additional property for parking facilities in order to make its holdings attractive to prospective purchasers or lessees. Buildings' commercial properties were not viable with new shopping centers which had been developed on the outskirts of Marion, and Buildings did not wish to borrow the capital necessary to make them viable. Buildings was also unable to find any purchasers for its holdings. On July 28, 1965, Fibre offered to purchase from Buildings all of the properties that it then owned for their appraised value of $233,250. Fibre thought that it could make the acquired commercial properties profitable and that it could trade the residential properties for other properties that it needed for its business. On August 10, 1965, the board of directors of Buildings adopted a plan of complete liquidation and accepted Fibre's offer to purchase the properties. On that day, the sale to Fibre was consummated for $233,250, which the *53 parties have agreed to be the fair market value of the properties transferred. By November 15, 1965, Buildings had taken all steps necessary to complete its liquidation and dissolution and distributed $353,547.83 to Bell as a final liquidating distribution. Buildings' earnings and profits accumulated after February 28, 1913, and not distributed as of November 15, 1965, amounted to $150,431.70. After acquiring the three parcels of real estate, Fibre continued to utilize the properties that it had previously rented from Coal in its business although it made substantial improvements upon them. Fibre improved the commercial properties acquired from Buildings but continued to rent them. In 1967, Fibre began selling the residential properties that it purchased from Buildings. The gain of John L. Bell in 1964 on the stock of Coal was as follows: Amount realized
$29,854.60
Basis 10,000.00
Gain
$19,854.60
Similarly, the gain of John L. Bell in 1965 on Building's stock was as follows: Amount realized
$353,547.83
Basis 143,664.00
Gain
$209,883.83
Opinion Bell was the sole shareholder of three corporations, Fibre, Coal, and Buildings. In 1964 *54 Coal sold all of its properties to Fibre and then liquidated distributing the sale proceeds and other cash to Bell. Petitioners Buildings sold all of its properties to Fibre and then liquidated distributing the sale proceeds and other cash to Bell. Petitioners contend that the amounts received by Bell should be treated as distributions in complete liquidation of Coal and Buildings under section 331 and that to the extent that the amounts received exceeded Bell's basis for his stock in the two corporations he should be required to recognize only long-term capital gain. Respondent contends that Coal and Buildings were actually in the process of reorganization with Fibre and that the amounts distributed represented dividends. This case was tried while American Manufacturing Co., 55 T.C. 204 (1970), on appeal (C.A. 2, July 26, 1971), was pending before this Court but before our decision therein was filed. American Manufacturing Co., supra, is the most definitive of this Court's decisions dealing with the situation present here where the steps taken by the taxpayer and his wholly-owned corporations literally comply with the provisions of the Code dealing with *55 complete liquidations, sections 331, 332, and 337, but in substance accomplish a reorganization coupled with the distribution of a dividend. See James Armour, Inc., 43 T.C. 295 (1964); Ralph C. Wilson, Sr., 46 T.C. 334 (1966); and South Texas Rice Warehouse Co., 43 T.C. 540 (1965), affirmed in part and reversed in part sub nom. Davant v. Commissioner, 366 F. 2d 874 (C.A. 5, 1966), which were approved and followed in American Manufacturing Co. See also Mark E. DeGroff, 54 T.C. 59 (1970), which also follows our earlier cases though it is not cited in American Manufacturing Co. We shall not attempt to discuss in detail the various arguments and alternative theories advanced by both parties where our 1224 recent decision clearly dictates the result of this case. Despite the overwhelming weight of our authority to the contrary, petitioner contends that we should treat the distributions received from Coal and Buildings as full payment for Bell's stock because in each case the corporation adopted a plan of liquidation, sold its assets for their fair market value, and liquidated within one year as required by section *56 331 and section 337. If Bell's corporations had only liquidated, we would have no quarrel with petitioner's analysis; however, Coal and Buildings did more than just liquidate. A complete liquidation contemplates the termination of the conduct of business in corporate form by its shareholders. By selling their assets to another corporation owned wholly by their sole shareholder, Coal and Buildings deprived their actions of this essential characteristic of a liquidation. Both before and after the purported liquidations Bell owned exactly the same properties in corporate solution; Bell did not discontinue any business previously conducted in corporate form. The only significant result of the steps taken by Coal and Buildings was to place some cash in Bell's hands. Petitioners attempt to distinguish this case from the others that we have cited on the grounds that the purported liquidations were not carried out for tax avoidance motives and that Coal and Buildings were compelled by business necessity to terminate their existence. We do not dispute the factual basis for petitioners' distinctions, but we fail to see how these facts alter the substance of the transactions. Bell still did *57 not discontinue any business that he previously conducted in corporate form. See American Manufacturing Co., supra, at 222-24. The transactions under consideration fit literally within the definition of a reorganization provided in section 368(a)(1)(D): SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS. (a) Reorganization. - (1) In General. - For purposes of parts I and II and this part, the term "reorganization" means - * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; Coal and Buildings each transferred substantially all of their assets to a corporation, Fibre, which was *58 controlled by their sole shareholder. Although petitioner disputes the point, it is well established that where the stock ownership of the transferor and transferee corporations is identical in a "D" reorganization section 354 is satisfied despite the fact that no stock of the transferee corporation has been exchanged or distributed. James Armour, Inc., supra at 307-08; ralph C. Wilson, Sr., supra at 309. Transfers of stock from Fibre to Coal and Buildings and thence to Bell would have been "meaningless [gestures]," and we have explicitly held "that no stock need ever be transferred in such a case." American Manufacturing Co., supra at 230. Although every case brought to our attention by petitioners has found that a reorganization did take place on facts similar to those present here, they attempt to distinguish James Armour, Inc., supra, and Ralph C. Wilson, Sr., supra, for example, on the ground that in those cases active businesses were transferred from one corporation to another where here the business activities of Coal and Buildings *59 were at an end before the transactions. We believe that petitioners' incantation of the continuity of business interest doctrine as first set forth by the Supreme Court in Gregory v. Helvering, 293 U.S. 465 (1935), and explained by cases like Lewis v. Commissioner, 176 F. 2d 646 (C.A. 1, 1949), in support of his argument is unwarranted. In the first place, although Coal and Buildings were not beehives of activity, they each conducted business: Coal rented properties to Fibre, and Buildings rented and sold properties to the public. After the transaction their businesses were largely continued by Fibre: Fibre continued to use the properties that it had previously rented from Coal, and Fibre continued to rent and sell Building's real estate. Admittedly, the businesses conducted were not identical to those carried on by Coal and Buildings, but they were similar. In the second place, Gregory v. Helvering, supra, is a germinal case in the law of corporate distributions which is often cited for many propositions. The continuity of business interest doctrine first formulated in Gregory was designed to prevent the taxpayer from being able to bail *60 out the earnings of her corporation at capital gain rates by use of a reorganization. We cannot imagine that the Supreme Court ever contemplated that this doctrine be turned around to permit a taxpayer to bail out earnings at capital gain rates by use of a liquidation when he continues his salm business in another corporation. Petitioner has not put forth any argument based upon fact or law which persuades us to deviate from the path delineated by our decisions in American Manufacturing Co., supra; James Armour, Inc., supra; Ralph C. Wilson, Sr., supra; and South Texas Rice Warehouse Co., supra. Accordingly, we hold that the purported liquidations of Coal in 1225 1964 and Buildings in 1965 which were simultaneous to their sales of all of their assets to Fibre were reorganizations with Fibre as defined in section 368(a)(1)(D). The remaining question to be decided is the proper treatment of the amounts distributed in 1964 and 1965 by Coal and Buildings to Bell. Although section 356 clearly deals with the case in which cash is distributed to a shareholder as an incident to a reorganization, respondent urges us to treat the *61 amounts received as distributions from Fibre and the liquidating corporations under section 301 citing section 1.301-1(1) of his regulations: (1) Transactions treated as distributions. - A distribution to shareholders with respect to their stock is within the terms of section 301 although it takes place at the same time as another transaction if the distribution is in substance a separate transaction whether or not connected in a formal sense. This is most likely to occur in the case of a recapitalization, a reincorporation, or a merger of a corporation with a newly organized corporation having substantially no property. * * * Under respondent's analysis the reorganizations with Coal and Buildings would be treated as transactions separate from the distributions of cash. The dividend distributions to Bell would be deemed to be in part from the earnings and profits of Fibre to the extent of the cash that it transferred to Coal and Buildings and in part from the earnings and profits of the liquidating companies. This treatment is not without appeal in view of the fact that most of the money *62 that Bell received originally came from Fibre; [1] however, in American Manufacturing Co., supra at 226-28, we rejected the respondent's view. Despite the fact that one of the alternative holdings in Davant v. Commissioner, supra, upheld the application of section 1.301-1(1) of the regulations to distributions made in circumstances similar to those present here, we held that section 356(a)(2) was the exclusive measure of dividend income provided by Congress where cash is distributed to shareholders as an incident of a reorganization. Section 356(a)(2) measures the amount of the dividend income in the following manner: SEC. 356. RECEIPT OF ADDITIONAL CONSIDERATION. (a) Gain on Exchanges. - * * * (2) Treatment as dividend. - If an exchange is described in paragraph (1) but has the effect of the distribution of a *63 dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property. Citing a second alternative holding in Davant v. Commissioner, supra, respondent contends that the earnings and profits of "the corporation" to be considered in section 356 (a)(2) are really the combined earnings and profits of Fibre and Coal with respect to the distribution in 1964 and of Fibre and Buildings with respect to the 1965 distribution. The Fifth Circuit's rationale in Davant was that where the stock ownership of the transferor corporation and transferee corporation in a reorganization was identical there was in essence only one corporation making the distribution. Though we were not entirely satisfied with the results obtained, we determined in American Manufacturing Co., supra at 230-31, that "the corporation" to whose earnings and profits section 356(a)(2) *64 refers could only be the corporation which in fact distributes cash to its shareholder. We noted the following: While we recognize that in particular circumstances a loophole may exist, yet, in light of the statutory language and the lack of warrant in the congressional history of the statute, we think to adopt respondent's multicorporation interpretation would strain the statutory language too far. We think it is up to Congress to correct this defect which has remained in the Code since its enactment and which in reality only exists in certain limited situations. Accordingly, we hold that the earnings and profits of Pintsch [the corporation distributing cash] are only to be considered in determining the amount of taxable dividend. Accordingly, we hold that in determining the amount of dividend income realized under section 356(a)(2) only the earnings and profits of Coal and Buildings at the time of the distributions should be used. In view of the foregoing, Decisions will be entered under Rule 50. 1226 Footnotes
1. The concurring and dissenting opinion of Judge Sterrett in American Manufacturing Co., at pp. 233-34↩, cogently explains this argument of respondent.