LESTER J. WORKMAN, Transferee, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Workman v. Commissioner
Docket No. 8795-72.
United States Tax Court
T.C. Memo 1977-378; 1977 Tax Ct. Memo LEXIS 64; 36 T.C.M. (CCH) 1534; T.C.M. (RIA) 770378; October 31, 1977, Filed Richard Baron, for the petitioner. Thomas M. Cryan, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in the 1959 Federal corporate income tax of L.J.P. Holding Co., Inc., in the amount of $39,518.61, plus additions to tax under sections 6653(a) and 6651(a), I.R.C. 1954, in the amounts of $1,975.93 and $9,879.65, respectively. The Commissioner further determined, and petitioner Lester J. Workman concedes, that petitioner is a transferee of the L.J.P. Holding Co., Inc. Due to concessions, the only issues for our consideration are: 1) Whether *66 the statutory notice of transferee liability herein was barred by the statutes of limitations set forth in sections 6501 and 6901, I.R.C. 1954; and 2) Whether L.J.P. Holding Co., Inc., was entitled to nonrecognition under section 337, I.R.C. 1954, for the gain realized upon the sale of all its assets in pursuit of an alleged plan of complete liquidation. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, the supplemental stipulation of facts, and accompanying exhibits are incorporated herein by this reference. Petitioner, Lester J. Workman, is an individual who resided in Sarasota, Florida, at the time he filed his petition in this case. A notice of liability was sent to petitioner by certified mail on August 23, 1972. L.J.P. Holding Co., Inc. ("L.J.P."), was incorporated in the State of New Jersey on December 23, 1946. Prior to June 24, 1959, L.J.P. was the owner of certain land, buildings and fixtures in Carlstadt, New Jersey, which were leased to Carlstadt Chemical Company ("Carlstadt"), a chemical manufacturing company. Petitioner obtained a B.A. degree from Columbia University, with a major in chemistry, in 1933. Subsequently *67 he went to work for L. Sonneborn and Sons ("Sonneborn"), a chemical company, where he served as a chemist until about 1940. In that year, he and his mother decided to go into business for themselves, and they formed a partnership operating under the name of Carlstadt Chemical Company.Initially, they contributed capital of approximately $11,000. The company began to manufacture chemicals for use by textile dye houses. Petitioner had worked at Sonneborn with another chemist named Paul Mazur ("Mazur"). Petitioner considered Mazur a very good chemist and, when he and his mother formed their own business, they attempted to convince Mazur to join them. Mazur, however, declined because he feared that the new business was too small. Between 1940 and 1946, petitioner's company prospered, and petitioner and his mother invested substantial additional capital in the business.By 1946, they were able to interest Mazur in joining them.At this time, the three decided to form two corporations, Carlstadt and L.J.P. L.J.P. took title to the land, buildings and fixtures which had been acquired by the partnership, and leased them to Carlstadt. Carlstadt held the remaining assets and operated *68 the chemical manufacturing business. Petitioner received two-thirds of the stock of each corporation, [1] and Mazur received one-third. Petitioner and Mazur continued to own two-thirds and one-third of each corporation, respectively, until June 24, 1959. Between 1946 and June 24, 1959, petitioner and Mazur together owned and operated a single chemical manufacturing business. Although this business was legally operated through two corporations, Carlstadt and L.J.P., petitioner and Mazur did not always observe corporate formalities with respect to the two separate corporations, and in particular petitioner did not generally distinguish particular assets as belonging to one or the other corporation. At some time prior to 1959, the relationship between petitioner and Mazur soured. For one thing, petitioner believed that Mazur's brother had copied certain chemical *69 processing equipment which petitioner had designed for Carlstadt. When he found out that Mazur's brother was running a chemical plant similar to Carlstadt's, petitioner told Mazur that he wanted to end their collaboration. Accordingly, they decided to sell the business to an outside purchaser. After two unsuccessful attempts to sell the business, and continued interpersonal strife, petitioner threatened to liquidate the corporations; at that point, Mazur offered to buy out petitioner. Petitioner was willing to sell out his entire interest in the chemical manufacturing business for $200,000, the amount which petitioner believed he (and his mother) had contributed to the capital of the two corporations. After consulting with his attorney, petitioner agreed to the following plan, which he and Mazur proceeded to carry out. First, petitioner exchanged his two-thirds stock interest in Carlstadt for Mazur's one-third stock interest in L.J.P. Second, L.J.P. sold all of its assets (the land, buildings, and fixtures) to Carlstadt for $167,885.93, which Carlstadt paid in the form of a note. [2] Carlstadt also executed a note in the amount of $32,114.07, payable to petitioner, in satisfaction *70 of certain debts owed petitioner. [3] The notes were secured by first and second mortgages, respectively, on the land, buildings and equipment of Carlstadt. Third, petitioner caused L.J.P., now his wholly-owned corporation, to liquidate completely and distribute all its assets (namely, the note and mortgage for $167,885.93) to petitioner. The first two steps were accomplished by a series of agreements closed on June 24, 1959. The third, the liquidation of L.J.P. and the distribution of its assets to petitioner, was completed between June 24, 1959 and August 1, 1959.
On July 15, 1959, Industrial Trends Corporation ("Industrial Trends") was incorporated under the laws of New Jersey. *71 Petitioner was the president and sole shareholder of Industrial Trends. On or about August 1, 1959, petitioner assigned to Industrial Trends the note and mortgage in the amount of $167,885.93 which he had received as a liquidating distribution from L.J.P. Petitioner incorporated Industrial Trends in order to seek out new business opportunities for himself and to have a corporate identification when dealing with prospective business contacts. He transferred the note from Carlstadt to Industrial Trends so that the interest payments could be used to pay the expenses of looking for a new business. For the first year of its existence, Industrial Trends carried on no business activities at all, and had no income since interest was not due on the Carlstadt note. About 1961 petitioner moved to Florida, and thereafter engaged in a search for new business opportunities and became involved in certain unsuccessful business ventures. At no time did Industrial Trends own or lease any of the assets used in the business of Carlstadt, or in any way engage in the chemical manufacturing business, nor did it own or lease real property. L.J.P. filed a Federal corporate income tax return for the *72 calendar year 1958 which had been prepared for it by the accounting firm of Koenig & Matthies. A Federal corporate income tax return for the short year January 1, 1959, through June or July 1959, was prepared for L.J.P. by Irving Kapp, a certified public accountant. [4] It was Mr. Kapp's practice to mail prepared income tax returns to his clients for signature and filing. It was petitioner's practice to sign income tax returns mailed to him by Mr. Kapp and to mail them on to the Internal Revenue Service. Neither Mr. Kapp nor petitioner specifically remembers handling L.J.P.'s 1959 corporate tax return in this manner. The Internal Revenue Service's Newark, New Jersey, District Office, where such return would have been filed, has no record of receiving a 1959 return for L.J.P. Between 1971 and 1973 the responsibility for maintaining custody and control of Federal corporate tax returns filed with the District Director, Newark, New Jersey, was in the process of being transferred from the District Director, Newark, New Jersey, to the Brookhaven Service Center. This transfer of custody and control required the transfer of certain "control" records from the District Director, Newark, *73 to the Brookhaven Service Center in Holtsville, New York. However, during this period of transfer, the District Director, Newark, retained "backup control" records in regard to Federal corporate income tax returns filed with the Newark District for the years 1958 through 1971. The Brookhaven Service Center has no record of any return having been filed for L.J.P. for 1959.
Petitioner filed an individual income tax return for the calendar year 1959 with the District Director, Newark, New Jersey.Petitioner signed Federal income tax returns for Industrial Trends for each of the fiscal years ending *74 June 30, 1962 through June 30, 1966, inclusive, and these returns were all filed with the District Director, Newark, New Jersey. Petitioner's 1959 individual Federal income tax return did not report any gain or loss from the sale or exchange of his stock in either Carlstadt or L.J.P. Petitioner believed that he had realized no gain or loss on the exchange of his Carlstadt stock for L.J.P. stock and on the liquidation of L.J.P., because he received pursuant to the exchange and liquidation a total of $200,000, which he believed to be his total capital contribution to the two corporations. Petitioner's 1959 individual income tax return was audited by the Commissioner and became the subject of a suit in this Court. That suit, Docket No. 1054-71, was tried before Judge Featherston on February 1, 1973. [5] One of the issues litigated during the course of that trial was adjustment B in the statutory notice of deficiency dated November 20, 1970, which held that Lester J. Workman had realized a long term capital gain in the amount of $162,399.05 in 1959 on the dissolution of L.J.P. and the distribution to him of the note of Carlstadt in the amount of $167,885.93. In the Commissioner's *75 brief in that case filed May 7, 1973, the Commissioner conceded the issue involving the long term capital gain of $162,399.05 on the dissolution of L.J.P. The Commissioner determined in the present case that L.J.P. was not completely liquidated in 1959 pursuant to a plan of liquidation, and that L.J.P. must therefore recognize gain of $158,074.44 on the sale of its assets to Carlstadt. He further determined that petitioner, as transferee of L.J.P.'s assets, was liable for the resulting deficiency in L.J.P.'s income tax as well as additions to tax under sections 6653(a) and 6651(a). Furthermore, the Commissioner has denied petitioner's allegation that L.J.P. filed a 1959 corporate income tax return and that the deficiency and transferee liability asserted by the Commissioner are therefore barred by the statute of limitations. OPINION 1. The Statute of Limitations.The first issue in this case is whether the liability asserted by the Commissioner against *76 the petitioner as transferee of the assets of L.J.P. Holding Co., Inc., is barred by the statutes of limitations contained in sections 6501 and 6901, I.R.C. 1954. Section 6501 [6] provides, in part, that a tax may be assessed within three years after the return was filed or, in certain cases, within six years; it also provides that in the case of failure to file a return, the tax may be assessed at any time. Section 6901(c) [7] provides that an assessment may be made against an initial transferee of the assets of a taxpayer within one year of the period of limitation upon assessment against the transferor. Since the notice of liability in this case was mailed to petitioner in 1972, more than 12 years after the 1959 L.J.P. return would normally have been due, it is clear that the statute of limitations had long since run if a timely return was filed. Conversely, however, the statute of limitations is still open if L.J.P. did not file any 1959 corporate income tax return. Swinks v. Commissioner,51 T.C. 13, 19-20.
*77 We have found as a fact that Irving Kapp, a certified public accountant, prepared a Federal corporate income tax return for L.J.P. for the short year 1959. We are unable to conclude on the basis of this record, however, that such return was ever signed by petitioner and filed on behalf of L.J.P.The only evidence presented by petitioner was his own testimony that he habitually signed and filed income tax returns sent to him by his accountant, and the testimony of L.J.P.'s accountant, Irving Kapp, that he habitually prepared tax returns for his clients and mailed them to the clients to be signed and filed. However, neither petitioner nor Kapp could specifically recall signing or filing the particular return of L.J.P. here in issue. The Commissioner, moreover, established that neither the District Director, Newark, New Jersey, with whom the return would normally have been filed, nor the Brookhaven Service Center, to which returns filed with the Newark District for 1959 have since been transferred, has any record whatsoever of a return having been filed for L.J.P. for 1959. It is the established rule in this Court, and the Court of Appeals for the Fifth Circuit has held, that the *78 statute of limitations is an affirmative defense which must be pleaded and proved by the taxpayer. United States v. Gurley,415 F.2d 144, 147 (C.A. 5); Knollwood Memorial Gardens v. Commissioner,46 T.C. 764, 792; Gatto v. Commissioner,20 T.C. 830, 832; Lawrence v. Commissioner,3 B.T.A. 40; but see United States v. Skolnick,149 F.Supp. 703 (S.D.N.Y.). In order to prevail with respect to the statute of limitations, petitioner must carry the burden of proving that L.J.P. filed a 1959 income tax return. This he has not done. We hold, therefore, that the liability here in issue is not foreclosed by the statute of limitations.See BJR Corp. v. Commissioner,67 T.C. 111, 119-121. 2. Section 337. The substantive issue presented by this case is whether L.J.P. is entitled to nonrecognition of gain on the sale of its assets under section 337, I.R.C. 1954. Section 337(a) provides the following general rule: If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in *79 complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. Petitioner asserts that L.J.P. complied in all respects with the requirements of section 337(a), and is therefore entitled to nonrecognition of the gain on the sale of all its assets to Carlstadt Chemical Company. The Commissioner, however, makes two separate arguments against the applicability of section 337(a). First, the Commissioner denies that L.J.P. adopted a plan of complete liquidation within the meaning of section 337(a), pursuant to which it sold its assets and distributed the proceeds to petitioner in complete liquidation. Second, the Commissioner asserts that there was no complete liquidation of L.J.P. but rather a liquidation-reincorporation by which the assets of L.J.P. were transferrred to Industrial Trends without a significant change in the organization or ownership of the corporate entity. Section 337 was enacted to eliminate the problem of determining whether the sale of an asset of a corporation in the process of complete liquidation was by the corporation or by its *80 shareholders who had received it as a distribution in liquidation. See Alameda Realty Corporation v. Commissioner,42 T.C. 273, 281. The provisions of section 337 are not elective, but apply in any case where the requirements of the section are, in fact, met. Section 1.337-1, Income Tax Regs.; Rev. Rul. 65-30, 1965-1 C.B. 155; see Bird Management, Inc. v. Commissioner,48 T.C. 586, 592-593. The Commissioner does not dispute petitioner's contention that L.J.P. literally complied with every requirement of section 337(a), save the requirement that the corporation adopt a timely plan of complete liquidation.[8] In this regard, we have found that petitioner, the sole shareholder of L.J.P., after consultation with his attorney, determined to sell all the assets of L.J.P. to Carlstadt and thereafter to distribute all of L.J.P.'s remaining assets, namely the note and mortgage from Carlstadt, to petitioner. We have further found that L.J.P. did, in pursuance of this plan, sell all its assets to Carlstadt and, within two months, distribute the note and mortgage to petitioner in complete liquidation. As we said in Alameda Realty Corporation,supra,42 T.C. at 281: *81 [There] is no statutory definition of the words "date of adoption of such plan" (of complete liquidation) used in section 337. The words "plan of liquidation" are also found in a number of sections of the Internal Revenue Code of 1939 and have been interpreted in many judicial decisions. It is clear from the cases that the adoption of a plan of liquidation does not require the adoption of a formal resolution of liquidation by the directors or stockholders. Whether such a plan has been adopted, and if so when, is a question of fact in each case. Mountain Water Co. of La Crescenta [35 T.C. 418, 425], and W.E. Guild,19 B.T.A. 1186 (1930). *82 We hold, on the facts here presented, that L.J.P., through its sole shareholder, adopted a plan of complete liquidation within the meaning of section 337 on or shortly before June 24, 1959. See Alameda Realty Corporation v. Commissioner,supra,42 T.C. at 281-282; Mountain Water Co.of La Crescenta v. Commissioner,35 T.C. 418, 426-427. L.J.P. has, therefore, literally complied with the requirements of section 337 for nonrecognition of gain on the sale of its assets to Carlstadt. See section 1.337-1, Income Tax Regs. (2d sentence). The Commissioner argues, however, that L.J.P. is not entitled to nonrecognition of gain under section 337, despite literal compliance with the requirements thereof, because the purported liquidation of L.J.P., coupled with the virtually simultaneous incorporation of Industrial Trends Corporation constitutes a reorganization with the meaning of section 368(a)(1)(D). The Commissioner bases his argument upon the following interpretation of the facts of this case: first, L.J.P. was a personal holding company whose only asset, prior to its liquidation, was a note and mortgage from Carlstadt, and whose sole shareholder *83 was petitioner; second, Industrial Trends Corporation was a personal holding company whose only asset was a note and mortgage from Carlstadt, and whose sole shareholder was petitioner; third, petitioner intended from the outset to liquidate L.J.P. and then transfer its assets to the newly incorporated Industrial Trends. On the basis of these facts the Commissioner asserts that Industrial Trends was the mere alter ego of L.J.P. and that, for tax purposes, the intervening liquidation and reincorporation should be disregarded, and the entire transaction treated as a "D" reorganization or, alternately, as an "F" reorganization under section 368(a)(1)(F). The Commissioner does not argue for such a result, or otherwise for the nonapplicability of section 337, in the context of a comparison of the business of L.J.P. as it existed before the sale of its operating assets with that of Industrial Trends. The Commissioner asserts that the facts in this case closely resemble those in Abegg v. Commissioner,50 T.C. 145, affirmed 429 F. 2d 1209 (C.A. 2), certiorari denied, 400 U.S. 1008, in which we found a "D" reorganization. In Abegg, the sole *84 shareholder of a Delaware corporation caused that corporation, in 1955, to sell all its operating assets for stock and other liquid securities. For two years, from 1955 until 1957, the corporation operated as a personal holding company for its sole shareholder, managing a portfolio of liquid securities. In 1957, the sole shareholder caused the corporation to liquidate and thereupon transferred the cash and securities received as a liquidating distribution to a new corporation organized under the laws of Panama and qualified to do business in New York. The new corporation served as a personal holding company managing a portfolio of liquid securities. The Court of Appeals for the Second Circuit, affirming this Court, stated, 429 F.2d at 1214: It is true enough that the vice of liquidation-reincorporation appears most clearly when a company engaged in active business purports to liquidate but the shareholders then put the operating assets back into a new corporation. Although as a practical matter incorporation is a necessity for the business, the shareholders by a mere sleight of hand would have withdrawn earnings and profits on payment only of a capital gains tax *85 and would have achieved a stepped-up basis for appreciated assets if the liquidation-reincorporation doctrine did not prevent. There seems to be no similar necessity for stockholders who have received only liquid assets on liquidation to transfer them to a new corporation. However, Abegg evidently decided it was to his advantage that the management of certain of his liquid assets in the United States which the Delaware corporation had come to own as a result of cessation of its active business, as well as other assets transferred by him, should not be conducted by him, but rather by a Panamanian corporation qualified in New York * * *. The difference between Abegg and this case, however, is that both this Court and the Second Circuit held that the transferor corporation in Abegg voluntarily relinquished its active business in 1955, and operated as a personal holding company for two years prior to the purported liquidation. See Abegg v. Commissioner,supra,50 T.C. at 157 and 429 F.2d at 1214-15. Abegg sought nonrecognition of the gain which the corporation realized in its dealings in securities during the period of its liquidation, not *86 of the gain which the corporation had realized on the sale of its operating assets in 1955, more than one year prior to the liquidating distribution. See Abegg v. Commissioner,supra, 50 T.C. at 148-149, 154. The issue presented to the Abegg courts, therefore, was only whether a "D" reorganization may occur when a corporation holding only liquid assets transfers those assets to a new corporation (with or without the intervention of the shareholders). In this case, however, L.J.P. was not a corporation whose only asset was liquid securities.It was a corporation which owned, maintained and rented out real property (land, buildings and fixtures) to a sister corporation engaged in the manufacture of chemicals. We think the Commissioner misconstrues the nature of section 337 when he begins his application of the step transaction doctrine only at the point at which L.J.P. held the note and mortgage of Carlstadt. Section 337 was, as stated above, intended to eliminate the problem of determining whether the sale of an asset of a corporation was accomplished by the corporation itself or by its shareholders. It assumes that a corporation which owns operating assets *87 may sell those assets and for a limited time (up to one year) exist as a corporation holding only cash and securities, cf. Verito v. Commissioner,43 T.C. 429, but it mandates that we disregard this interim period and treat the corporation as if it had distributed its operating assets directly to its shareholders and never itself received cash or securities. The situation herein fits this mold and is to be contrasted with that which existed in Abegg, where the transferor corporation engaged in activities as a personal holding company for a substantially longer period prior to the purported liquidation and formation of the transferee personal holding company, and where the gain for which section 337 nonrecognition was sought was not the gain upon sale of its business assets but rather the gain upon sale more than a year later of securities that were in its trading portfolio as a personal holding company.Assuming, then, that petitioner intended to incorporate Industrial Trends as part of the same plan under which he liquidated L.J.P., and that we may therefore apply the step transaction doctrine to compress a series of steps into one, cf. Pridemark, Inc. v. Commissioner,345 F. 2d 35, 41-42 *88 (C.A. 4), we think that the inquiry should start at the point of time prior to L.J.P.'s sale of its operating assets. This is essential in view of the fact that it is the gain on sale of L.J.P.'s operating assets that is here involved. The Commissioner erroneously would have us start the inquiry from the point in time after the sale of L.J.P.'s operating assets, and thus artificially attempt to fit this case into the Abegg mold.But the Commissioner's desired fit is a misfit. The case is fundamentally distinguishable. Upon this record and presentation by the parties, we hold that the mere fact that the proceeds of the sale of the operating assets of a corporation in a section 337 transaction find their way into a new corporation owned by the same shareholders is insufficient to deprive the old corporation of the benefits of that section.The situation herein stands in sharp contrast with that which existed in Telephone Answering Service Co. v. Commissioner,63 T.C. 423, affirmed in an unpublished opinion, 546 F. 2d 423 (C.A. 4), where operating assets continued in corporate solution controlled by the same interests and were utilized in *89 the same business after the purported section 337 liquidation.[9]
Accordingly, we hold that in the context of the record in this case, there was no liquidation-reincorporation of such character as to bring the reorganization provisions based upon section 368(a)(1) into play so as to render inapplicable the otherwise controlling provisions of section 337. Decision will be entered for the petitioner. Footnotes
1. Although petitioner's mother contributed a substantial part of the capital of the business, it appears that she did not receive any stock interest in either corporation. In any event, it is stipulated that before June 24, 1959, petitioner had come to own the full two-thirds stock interest in each corporation.↩
2. The note bore interest at the rate of six percent, payable in installments beginning one year after the date of the sale; the principal was to be repaid in installments beginning two years after the date of sale, and continuing for ten years. The note was eventually paid in full. It has been stipulated that the fair market value of this note at the time of its distribution to petitioner was equal to its face amount. ↩
3. The terms of this note were substantially similar to the note given L.J.P.↩
4. Mr. Kapp had located a retained copy of L.J.P.'s 1959 corporate income tax return about a year prior to the trial of this case, but was unable to produce that copy at trial. He testified that the return was for a short taxable year and that it stated that L.J.P. had been completely liquidated under section 337, I.R.C. 1954↩. We were satisfied that relations between petitioner and Kapp had become strained, he was not a friendly witness on petitioner's behalf, and we find no reason to disbelieve his testimony favorable to petitioner regarding the contents of the 1959 L.J.P. return.
5. Judge Featherston's memorandum opinion was filed on October 29, 1973. See 32 T.C.M. 1126↩.The parties have stipulated that the record in Docket No. 1054-71 should be made a part of these proceedings.
6. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
* * *
(c) Exceptions.-- * * *
(3) No return.--In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *
(e) Substantial Omission of Items.--Except as otherwise provided in subsection (c)-- (1) Income taxes.--In the case of any tax imposed by subtitle A-- (A) General Rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *↩
7. SECTION 6901.TRANSFERRED ASSETS. * * *
(c) Period of Limitations.--The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows: (1) Initial Transferee.--In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor * * *.↩
8. The Commissioner, at trial and on brief, argued that L.J.P. had not filed a return for 1959 containing the information required by section 1.337-6(a), Income Tax Regs., and that such failure barred L.J.P. from the benefits of section 337(a). The Commissioner has conceded on brief, however, that failure to comply with the reporting requirements of section 1.337-6(a) does not foreclose nonrecognition of gain under section 337(a) as a matter of law, but is merely evidence on the issue of whether a plan of complete liquidation was in fact adopted. See Rev. Rul. 65-30, 1965-1 C.B. 155. And petitioner adduced competent evidence at trial from which we have concluded that L.J.P.'s accountant prepared a return showing a section 337↩ liquidation, although we found the evidence insufficient to establish that the return was in fact filed.
9. Cf. Home Construction Corp. of America v. United States,439 F. 2d 1165, 1170-1171 (C.A. 5); Davant v. Commissioner,366 F. 2d 874 (C.A. 5), certiorari denied 386 U.S. 1022; DeGroff v. Commissioner,54 T.C. 59, affd. per curiam 444 F. 2d 1385 (C.A. 10); Wilson v. Commissioner,46 T.C. 334; Moffatt v. Commissioner,42 T.C. 558, affirmed 363 F. 2d 262 (C.A. 9), certiorari denied 386 U.S. 1016; but see Rev. Rul. 60-50, 1960-1 C.B. 150↩.